**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 27, 2010

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 138258

STEVEN EDWARD FLICK,

Defendant-Appellant.

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 138261

DOUGLAS BRENT LAZARUS,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

In these consolidated cases, we consider the scope of the Michigan Penal Code

provision that criminalizes the "knowing possession" of child sexually abusive material,

MCL 750.145c(4). Defendants intentionally accessed and purposely viewed depictions of child sexually abusive material on the Internet. The only child sexually abusive material later found on their computers, however, had been automatically stored in temporary Internet files.[1]

Defendants contend that because the prosecution failed to establish that they knowingly possessed child sexually abusive material, the district courts erred by binding them over for trial. We hold that the term "possesses" in the phrase "[a] person who knowingly possesses any child sexually abusive material" in MCL 750.145c(4) includes both actual and constructive possession. Contrary to defendants' arguments, the evidence presented at the preliminary examinations established that defendant Flick and defendant Lazarus did more than passively view child sexually abusive material on the Internet. When any depiction of child sexually abusive material was displayed on each defendant's computer screen, he knowingly had the power and the intention to exercise dominion or

---

[1] Temporary Internet files or TIFs are records of all the websites a computer user has visited. Every time a user visits a website, most web browsers will automatically send a record of that website to the hard drive so that the computer can access the website faster in the future. A user can access the stored TIF even if working off-line. The TIF remains on the computer permanently unless the user manually deletes that record or the computer deletes that record in accordance with its maintenance settings. Even after its deletion, evidence of the TIF remains in an imbedded index on the computer's hard drive. The "internet cache" or "internet temporary folder" is a "set of files kept by a web browser to avoid having to download the same material repeatedly. Most web browsers keep copies of all the web pages that you view, up to a certain limit, so that the same images can be redisplayed quickly when you go back to them." Douglas Downing, et al., *Dictionary of Computer and Internet Terms*, 8th ed, p 149 (Barron's, 2003).

2

control over that depiction. As a result, each defendant constructively possessed those images, which amounts to possession of child sexually abusive material. Consequently, we affirm the Court of Appeals judgment and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

### A. *PEOPLE v FLICK*, DOCKET NO. 138258

Federal agents identified defendant Steven Edward Flick as a purchaser of access to a website containing child pornography during April, September, and October 2002. In May 2006, federal agents and Jackson County Sheriff's Detective Dwaine Pittman obtained a search warrant for defendant Flick's computer and seized it. A forensic examination of the computer revealed child pornographic images on the hard drive. In a subsequent interview with Detective Pittman, defendant Flick acknowledged that he paid by credit card to access websites containing child pornography. Defendant Flick also admitted that he had downloaded child pornographic images on his computer. Defense forensic computer analyst Larry Dalman also examined the computer. Dalman corroborated the results of the forensic examination performed by a specially trained federal agent, which located "numerous" child pornographic images on defendant Flick's hard drive. However, Dalman reported that each image had been deleted or was located in the computer's temporary Internet files.

The prosecution charged defendant Flick with possession of child sexually abusive material in violation of MCL 750.145c(4). Defendant Flick moved to dismiss in the district court, arguing that he had not "possessed" child pornography as required by the

3

statute. The district court denied the motion, observing that "it stretches the imagination somewhat to argue that a person does not possess child pornography where he admits he purchased it and downloaded it no matter where it appears on his computer system." Defendant Flick subsequently moved to quash the information in the circuit court, contending that the evidence established that he merely viewed, rather than knowingly possessed, child pornography. The circuit court denied the motion and refused to dismiss the case.

Defendant Flick filed a delayed application for leave to appeal. After granting the application and consolidating defendant Flick's appeal with the prosecution's appeal in *People v Lazarus*,[2] the Court of Appeals affirmed the circuit court order denying defendant Flick's motion to quash the information and dismiss the case in an unpublished opinion per curiam.[3] Defendant Flick then applied for leave to appeal in this Court.

### B. *PEOPLE v LAZARUS*, DOCKET NO. 138261

Federal agents linked defendant Douglas Brent Lazarus's e-mail information to an online child pornography subscription purchased using his credit card. In September 2006, Detective Pittman interviewed defendant Lazarus. During the interview, defendant Lazarus stated that he knew that his former spouse had turned over to federal agents the computer that the couple had purchased together. Defendant Lazarus admitted that he

---

[2] *People v Flick*, unpublished order of the Court of Appeals, entered August 21, 2007 (Docket No. 278531).

[3] *People v Lazarus* and *People v Flick*, unpublished opinion per curiam of the Court of Appeals, issued December 23, 2008 (Docket Nos. 277925 and 278531).

4

looked at child pornography and acknowledged that he paid by credit card to access websites containing child pornographic images.

Joshua Edwards, a specially trained federal agent, searched defendant Lazarus's computer. The forensic search revealed "a large number of websites that contained titles indicative of child pornography" and approximately 26 "banners strung together" of child pornographic images. Edwards explained that "there would be more images if you counted each one from the banner." Among the 26 banner images, either 12 or 14 images resided in the "allocated space" of defendant Lazarus's computer. The allocated space of defendant Lazarus's computer also housed two pornographic movies in which the persons depicted "appeared to be under the age of 18." According to Edwards, allocated space meant "files that are not deleted and are still on a hard drive that the user could access." Edwards testified that the images found in the unallocated space of the computer also remained accessible until the file is "overwritten with new data," which he analogized to a person's setting aside a video cassette recording of a television show. Edwards acknowledged, however, that each depiction was located in the computer's temporary Internet files.

The prosecution charged defendant Lazarus with possession of child sexually abusive material in violation of MCL 750.145c(4). Defendant Lazarus moved to quash the information in the district court, arguing that the existence of child pornographic images in his computer's temporary Internet files did not establish "knowing possession." The district court denied defendant Lazarus's motion. Defendant Lazarus renewed his motion to quash in the circuit court, asserting that he had "simply engaged in the passive

5

viewing of the images on his computer screen," and that passive viewing did not constitute possession of child pornography. The circuit court agreed and granted the motion to quash.

The prosecution appealed as of right. After consolidating the prosecution's appeal with defendant Flick's appeal, the Court of Appeals reversed the circuit court order quashing the information and dismissing the case against defendant Lazarus in an unpublished opinion per curiam.[4] The Court of Appeals also interpreted MCL 750.145c(4). The panel concluded that although child sexually abusive images were located in defendants' temporary Internet files, "[b]ecause defendants unquestionably possessed the computers in which the detectives found multiple contraband images of child pornography," the prosecution established probable cause that defendants possessed child sexually abusive material. The Court of Appeals further held that "the evidence that defendants sought, paid for, received and viewed the child pornographic images, and that the images continued to reside in their computers, suffices to establish a reasonable inference that defendants knowingly possessed the contraband." Defendant Lazarus then applied for leave to appeal in this Court.

We granted both applications for leave to appeal and directed the parties to address:

> (1) whether intentionally accessing and viewing child sexually abusive material on the Internet constitutes 'knowing possession' of such

---

[4] *People v Lazarus* and *People v Flick*, unpublished opinion per curiam of the Court of Appeals, issued December 23, 2008 (Docket Nos. 277925 and 278531).

material under MCL 750.145c(4); and (2) whether the presence of automatically created "temporary internet files" on a computer hard drive may amount to "knowing possession" of child sexually abusive material or may be circumstantial evidence that defendant 'knowingly possessed' such material in the past.[5]

## II. STANDARD OF REVIEW

Whether conduct falls within the scope of a penal statute is a question of statutory interpretation. We review questions of statutory interpretation de novo. *People v Idziak*, 484 Mich 549, 554; 773 NW2d 616 (2009). When reviewing a district court's bindover decision, we review the court's determination regarding the sufficiency of the evidence for an abuse of discretion, but we review the court's rulings concerning questions of law de novo. *People v Schaefer*, 473 Mich 418, 427; 703 NW2d 774 (2005).

## III. ANALYSIS

Both defendants were charged under MCL 750.145c(4), which provides in pertinent part:

> *A person who knowingly possesses any child sexually abusive material* is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $10,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child. [Emphasis added.]

MCL 750.145c(1)(m) defines "child sexually abusive material" as including "any depiction, whether made or produced by electronic, mechanical, or other means,

---

[5] 483 Mich 1024 (2009).

including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture . . . ."[6]

Defendants concede that they intentionally bought access to websites containing depictions of child pornography or "child sexually abusive material" under MCL 750.145c(1)(m). However, defendants argue that MCL 750.145c(4) criminalizes the knowing possession of child sexually abusive material, rather than the accessing and viewing of such material. Because *viewing* child pornography on the Internet is distinct from *possessing* it, they contend that the district courts erred by binding defendants over for trial.

The prosecution responds that because each defendant intentionally paid to access websites containing child pornography and admitted placing child pornography on his computer, and child pornographic images remained in each defendant's temporary

---

[6] MCL 750.145c(1)(m) provides in full:

"Child sexually abusive material" means any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.

Internet files, the district courts did not abuse their discretion in binding defendants over for trial. The statute criminalizes the knowing possession of "any child sexually abusive material," which includes in relevant part an "electronic visual image" or "computer or computer-generated image . . . ."

The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. *People v Lowe*, 484 Mich 718, 721; 773 NW2d 1 (2009). "The touchstone of legislative intent is the statute's language." *People v Gardner*, 482 Mich 41, 50; 753 NW2d 78 (2008). The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. *Lowe*, 484 Mich at 721-722. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a "term of art" with a unique legal meaning. *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007); MCL 8.3a. When we interpret the Michigan Penal Code, we do so "according to the fair import of [the] terms, to promote justice and to effect the objects of the law." MCL 750.2.

The primary question in interpreting MCL 750.145c(4) is the meaning of the term "possesses" in the phrase, "[a] person who knowingly possesses any child sexually abusive material . . . ." The statute does not define the term "possesses." Typically, when a statute fails to internally define terms, we accord those terms their ordinary meaning. *People v Peals*, 476 Mich 636, 641; 720 NW2d 196 (2006). In doing so, it is often helpful to consult the definitions in a lay dictionary. *Id*. Where the undefined term has a unique legal meaning, however, it "shall be construed and understood according to

9

such peculiar and appropriate meaning." MCL 8.3a; see *People v Covelesky*, 217 Mich 90, 100; 185 NW 770 (1921) ("A well recognized rule for construction of statutes is that when words are adopted having a settled, definite and well known meaning at common law it is to be assumed they are used with the sense and meaning which they had at common law unless a contrary intent is plainly shown."). Because the term "possesses" has a unique legal meaning, we interpret the phrase "[a] person who knowingly possesses any child sexually abusive material" in accordance with its settled meaning in legal dictionaries and at common law.[7]

In MCL 750.145c(4), the term "possesses" is a verb. Black's Law Dictionary (7th ed) defines the verb "possess" as "[t]o have in one's actual control; to have possession of."[8] The legal definition of the verb "possess" further directs our attention to the related concepts of "control" and "possession." Black's Law Dictionary (7th ed) defines the

---

[7] Our conclusion that the term "possesses" and its cognate forms, including "possessor" and "possession," are legal terms of art is hardly novel. See e.g., Salmond, *Jurisprudence* (Williams ed, 10th ed, 1947), p 285 ("In the whole range of legal theory there is no conception more difficult than that of possession. The Roman lawyers brought their usual acumen to the analysis of it, and since their day the problem has formed the subject of voluminous literature, while it still continues to tax the ingenuity of jurists.").

[8] Lay dictionaries define the verb "possess" more broadly. *Random House Webster's College Dictionary* (2001), for example, lists ten definitions for the verb "possess," including: (1) "to have as belonging to one; have as property; own"; (2) "to have as a faculty, quality, or the like"; (3) "to occupy or control from within"; (4) "to dominate or actuate the manner of such a spirit"; (5) "to cause to be dominated or influenced, as by an idea or feeling"; (6) "to have knowledge of, as a language"; (7) "to keep or maintain in a certain state, as of peace or patience"; (8) "to make owner, holder, or master, as of property or information"; (9) "to have sexual intercourse with"; and (10) "to seize or take; gain."

10

noun "control" as "[t]he direct or indirect power to direct the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to manage, direct, or oversee." It defines the noun "possession" as "1. [t]he fact of having or holding property in one's power; the exercise of dominion over property. 2. [t]he right under which one may exercise control over something to the exclusion of all others; the continuing exercise of a claim to the exclusive use of a material object. 3. [s]omething that a person owns or controls. 4. [a] territorial dominion of a state or nation." Black's Law Dictionary (7th ed) also contains 27 separate subentries in addition to these definitions of "possession."

The definitions of "control" and "possession" provide helpful insight regarding how we should interpret the term "possesses," particularly in light of the surrounding context provided by the Legislature. The Legislature reasonably selected the verb "possesses" to communicate that only a person who has the power to exercise a degree of dominion or control over "any child sexually abusive material" is sufficiently culpable to fall within the scope of MCL 750.145c(4). That is, the possessor holds the power or authority to control or exercise dominion over child sexually abusive material at a given time. Moreover, the Legislature enumerated what constitutes "child sexually abusive material" in great detail, including, in relevant part, "*any depiction*, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, *electronic visual image*, computer diskette, *computer or computer-generated image*, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act . . . ." MCL

11

750.145c(1)(m). A review of the entire subsection reveals that the Legislature intended to broadly encapsulate any depictions, storage devices, and reproductions of child sexually abusive material in MCL 750.145c(1)(m). Thus, the Legislature chose to prohibit the possession of a wide range of child sexually abusive material. However, the Legislature also modified the verb "possesses" with the adverb "knowingly," thereby requiring a specific *mens rea* or knowledge element as a prerequisite for establishing criminal culpability under MCL 750.145c(4). Stated another way, unless one knowingly has actual physical control or knowingly has the power and the intention at a given time to exercise dominion or control over a depiction of child sexually abusive material, including an "electronic visual image" or "computer image," either directly or through another person or persons, one cannot be classified as a "possessor" of such material.

Moreover, this interpretation of the term "possesses" is consistent with the established meaning of possession in Michigan caselaw. In our criminal jurisprudence, possession is either actual or constructive. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992); *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). Possession can be established with circumstantial or direct evidence, and the ultimate question of possession is a factual inquiry "to be answered by the jury." *Hill*, 433 Mich at 469. Proof of actual physical possession is not necessary for a defendant to be found guilty of possessing contraband, including a controlled substance. *Wolfe*, 440 Mich at 519-520. "Although not in actual possession, a person has constructive possession if he 'knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . .'" *Hill*, 433 Mich at 470,

12

quoting *United States v Burch*, 313 F2d 628, 629 (CA 6, 1963). Dominion or control

over the object need not be exclusive. *People v Konrad*, 449 Mich 263, 271; 536 NW2d

517 (1995). This Court has described constructive possession of an article in the context

of firearms as when "there is proximity to the article together with indicia of control."

*Hill*, 433 Mich at 470. Similarly, when analyzing whether the defendant had constructive

possession of cocaine, the Court stated "[t]he essential question is whether the defendant

had dominion or control over the controlled substance." *Konrad*, 449 Mich at 271.

Konrad further described the meaning of "dominion or control" in the context of a

controlled substance, stating:

> In the foremost discussion of what is necessary to have dominion or
> control over drugs, Judge Posner explained that a defendant "need not have
> them literally in his hands or on premises that he occupies but he must have
> the right (not the legal right, but the recognized authority in his criminal
> milieu) to possess them, as the owner of a safe deposit box has legal
> possession of the contents even though the bank has actual custody."
> *United States v Manzella*, 791 F2d 1263, 1266 (CA 7, 1986). [*Konrad*, 449
> Mich at 271.]

In *Konrad*, the Court held that "[t]he evidence permits the conclusion that the defendant

had paid for the drugs and that they were his—that is, that he had the intention and

power, in the sense referred to by Judge Posner, to exercise control over them." *Id*. at

273. More recently, the United States Court of Appeals for the Sixth Circuit

differentiated actual from constructive possession, explaining that "[a]ctual possession

exists when an individual knowingly has direct physical control over a thing at a given

time, and constructive possession exists when a person does not have physical possession

but instead knowingly has the power and the intention at a given time to exercise

13

dominion and control over an object, either directly or through others."[9]   Having reviewed the meaning of possession at common law along with the relevant legal definitions and surrounding statutory context, we conclude that the term "possesses" in MCL 750.145c(4) includes both actual and constructive possession.  We further conclude that a defendant constructively possesses "any child sexually abusive material" when he knowingly has the power and the intention at a given time to exercise dominion or control over the contraband either directly or through another person or persons.

When the term "possesses" is viewed in this light, defendants' arguments that they merely *viewed,* rather than *knowingly possessed*, child sexually abusive material are untenable.  It is undisputed that each defendant purposely operated his computer to locate websites containing child sexually abusive material and voluntarily used his credit card to purchase access to websites with depictions of such material.  Upon subscribing to these websites and intentionally accessing the depictions of child sexually abusive material contained there, defendants knowingly had the power and the intention at a given time to exercise control or dominion over the contraband depictions of child sexually abusive material that appeared as either "electronic visual images" or "computer images" on their computer screens.  Defendants' insistence that they merely viewed child sexually abusive material is a chimerical distinction that ignores defendants' intention and power to exercise control or dominion over the depictions of child sexually abusive material displayed on their computer screens—material that defendants sought and paid for the

---

[9] *United States v Hunter*, 558 F3d 495, 504 (CA 6, 2009).

14

right to access. Indeed, the many intentional affirmative steps taken by defendants to gain access and control over child sexually abusive material belie their claims that they merely viewed the depictions.

The evidence in both cases established that defendants did more than passively view child sexually abusive material. Defendant Flick admitted that he paid by credit card to download child sexually abusive material on his computer, and numerous images of such material were found on defendant Flick's hard drive. Larry Dalman, the forensic computer analyst retained by defendant Flick, reported that each image had been deleted. Defendant Flick's admission that he downloaded child sexually abusive material, coupled with Dalman's report that images of child sexually abusive material had been deleted, sufficiently establishes that at a minimum defendant Flick knowingly had the power and the intention to exercise dominion or control over the depictions of child sexually abusive material on his computer screen. Just as a criminal defendant cannot dispose of a controlled substance without either actually physically controlling it or having the right to control it,[10] a defendant cannot intentionally procure and subsequently dispose of a depiction of child sexually abusive material without having either actual or constructive possession. Defendant Lazarus's computer also contained child sexually abusive material that he purposely sought and paid to access. According to Joshua Edwards, multiple depictions of child sexually abusive material found on the hard drive were accessible. Regardless of whether the only remaining presence of child sexually abusive

---

[10] See CJI2d 12.7.

15

material on defendant Lazarus's computer was located in his temporary Internet files, the contraband depictions at issue are the "electronic visual images" or "computer images" on his computer screen, and not the automatically created temporary Internet files.

When defendants purposely accessed depictions of child sexually abusive material on their computer screens, each defendant knowingly had the power and the intention to exercise dominion or control over the depiction in myriad ways with a few keystrokes or mouse clicks. For example, defendants could: (1) print a hard copy of the depiction, (2) resize it, (3) internally save it to another folder on the hard drive, (4) externally save it using a CD-R or USB flash drive, (5) set the depiction as a screen saver or background theme, (6) share the depiction using a file-streaming network, (7) e-mail it, (8) post the depiction as a link on a website, (9) use the depiction to create a video or slide show, or (10) delete the depiction from the hard drive. We emphasize that a defendant knowingly having the power and the intention at a given time to exercise control or dominion over the depiction on his computer screen is similar to a defendant coming across contraband while walking down the street and taking additional intentional affirmative steps to knowingly possess it. In this regard, the Alabama Court of Criminal Appeals offered the following helpful analogy:

> "If a person walks down the street and notices an item (such as child pornography or an illegal narcotic) whose possession is prohibited, has that person committed a criminal offense if they look at the item for a sufficient amount of time to know what it is and then walks away? The obvious answer seems to be 'no.' However, if the person looks at the item long enough to know what it is, then reaches out and picks it up, holding and viewing it, and taking it with them to their home, that person has moved from merely viewing the item to knowingly possessing the item by

16

reaching out for it and controlling it. In the same way, the defendant in this case reached out for prohibited items and, in essence, took them home."[11]

Whether the defendant initially views the contraband while walking down the street or while accessing the Internet, it is not the initial viewing that amounts to knowing possession. Rather, it is the many intentional affirmative steps taken by the defendant to gain actual physical control, or to knowingly have the power and the intention at a given time to exercise dominion or control over the contraband either directly or through another person or persons, that distinguishes mere viewing from knowing possession. In either case, the prosecution must establish that the defendant had either actual or constructive possession of child sexually abusive material.

By contrast, if a person accidentally views a depiction of child sexually abusive material on a computer screen, that person does not "knowingly possess" any child sexually abusive material in violation of MCL 750.145c(4). For example, imagine a person who purchases a ticket and sits in a theater expecting to see a critically acclaimed film, but the motion picture projectionist instead inserts a film containing child sexually abusive material. When that person views the unexpected depiction of child sexually abusive material on the theater screen, he does not "possess" child sexually abusive material because he accidentally viewed a film as a result of the actions of a rogue

---

[11] *Ward v State*, 994 So 2d 293, 299-300 (Ala Crim App, 2007) (citation omitted); see also *United States v Kain*, 589 F3d 945, 950 (CA 8, 2009) ("A computer user who intentionally accesses child pornography images on a web site gains actual control over the images, just as a person who intentionally browses child pornography in a print magazine 'knowingly possesses' those images, even if he later puts the magazine down without purchasing it.").

17

projectionist. Similarly, imagine a person who accesses a website where one would not expect depictions of child sexually abusive material to appear, but a depiction appears on the website as a result of computer hackers. That person did not intentionally seek out depictions of child sexually abusive material or purposely view such depictions. Rather, the unsolicited depiction appeared on the computer screen, and once that person realized the contents of the website, he undertook efforts to remove the depiction from his computer screen. Under these facts, a person does not "possess" child sexually abusive material by virtue of his accidental viewing of a contraband depiction on the Internet.[12]

## IV. RESPONSE TO DISSENT

The dissent concludes that MCL 750.145c(4) should not be interpreted to authorize a trial court to bind over a defendant who admits that he intentionally accessed and purposely viewed depictions of child sexually abusive material on the Internet. We disagree with the dissent's conclusion because the Legislature drafted MCL 750.145c(4) in broad terms, criminalizing the knowing possession of "any child sexually abusive material." Our interpretation ascertains and gives effect to the legislative intent based on the words of the statute, the surrounding context, and the unique legal meaning of the

---

[12] Our example about accidental viewing is readily distinguishable from these consolidated cases where neither defendant claims that he accidentally accessed child sexually abusive material on the Internet. Even if defendants had made such a claim, a review of the record would dispel the validity of it. During defendant Lazarus's preliminary examination, the supervising federal agent testified that federal investigators "wanted to identify websites that were exclusively child pornography and had exclusive child pornography content on them." The federal agent explained, "[a]nd with that then—there wouldn't be much argument in terms of the website containing, say, for instance, adult pornography or other types of pornography."

18

term "possesses." Contrary to the dissent's analysis, we believe that the evidence in these consolidated cases provides a sufficient basis to conclude that neither district court abused its discretion in binding defendants over for trial. At trial, both defendant Flick and defendant Lazarus will have ample opportunity to develop a full factual record and dispute whether the prosecution can successfully establish the "knowing possession" of child sexually abusive material in violation of MCL 750.145c(4).

We agree with the dissent that it is important to understand the interrelated roles of the computer user and the computer in the creation and deletion of temporary Internet files. After discussing a law review note and providing select excerpts of federal agent Joshua Edwards's testimony, the dissent correctly notes that "it is the *computer*, not the user, that creates and deletes the TIFs." However, both sources upon which the dissent relies stand for a more nuanced proposition. That is, a computer user engages in the volitional search for depictions of child sexually abusive material on the Internet, which causes the computer to create temporary Internet files. As the law review note explains, "[t]hese volitional searches for child pornography provide a user with access to and control over child pornography images."[13] When asked whether a computer user would have to take "some proactive measure" before temporary Internet files containing images

---

[13] Note, *Possession of child pornography: Should you be convicted when the computer cache does the saving for you?*, 60 Fla L R 1205, 1206 (2008). The note further explains that although viewing a depiction of child sexually abusive material on a computer screen may seem like window-shopping rather than possession, "surfing the Internet involves significant interaction and exchange of information between a user's computer and the web servers visited. Furthermore, the user retains a significant level of control over the information on the computer." *Id*. at 1207.

of child sexually abusive material would appear on a computer hard drive, Edwards responded, "[y]es, someone would have had to put them on the hard drive." Therefore, the dissent's sources clarify that the creation and deletion of temporary Internet files by a computer depends on the volitional actions taken by the computer user.

Finally, the dissent asserts that our constructive possession analysis creates "unnecessary confusion." In fact, the dissent manufactures this confusion by conflating our preliminary review of the legal definition of the undefined term "possesses" in Black's Law Dictionary (7th Ed) with our subsequent discussion of the adverb "knowingly." When read in context, there is no confusion. We have carefully reviewed the meaning of the term "possesses" in the context of MCL 750.145c(4), in legal dictionaries, and in our criminal jurisprudence to conclude that the term "possesses" refers to both actual and constructive possession. On the basis of the established meaning of constructive possession in Michigan caselaw, we hold that a defendant constructively possesses child sexually abusive material when he knowingly has the power and the intention at a given time to exercise dominion or control over the contraband either directly or through another person or persons. Because our holding is unambiguous and entirely consistent with existing caselaw, we reject the dissent's efforts to create confusion about our analysis where none exists.

## V. CONCLUSION

The Internet has become the child pornographer's medium of choice. It strains credibility to think that the Legislature intended the provision at issue—designed to protect children from sexual abuse—to preclude the prosecution of individuals who

20

intentionally access and purposely view depictions of child sexually abusive material on the Internet. A statute outlawing the knowing possession of "*any* child sexually abusive material" is consistent with the societal desire to protect children by preventing the dissemination of child pornography to an audience with the power and the intention to exercise dominion or control over such contraband depictions. Our interpretation supports the statute's purpose in a manner consistent with the statutory language.

The district courts did not err in binding defendants over for trial. Both defendants intentionally accessed and purposely viewed child sexually abusive material on the Internet. When the "electronic visual image" or "computer image" of such material was displayed on each defendant's computer screen, he knowingly had the power and the intention to exercise dominion or control over the depiction displayed. Accordingly, in each case, we affirm the judgment of the Court of Appeals and remand for further proceedings consistent with this opinion.

WEAVER (except as to Part IV), YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, J.

21

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                     No. 138258

STEVEN EDWARD FLICK,

        Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                     No. 138261

DOUGLAS BRENT LAZARUS,

        Defendant-Appellant.

_____

CORRIGAN, J. (*concurring*).

I write separately to explain that I would also address the second issue on which this Court granted leave to appeal: whether the presence of temporary Internet files containing depictions of child sexually abusive material may amount to "knowing possession" of child sexually abusive material or may be circumstantial evidence that the defendant knowingly possessed such material in the past.[1] I acknowledge that the issue is

---

[1] 483 Mich 1024 (2009).

not decisive in either of these consolidated cases. However, I offer my analysis because our courts will continue grappling with this emerging issue as long as the Internet remains the child pornographer's medium of choice. Accordingly, I would hold that the presence of temporary Internet files containing depictions of child sexually abusive material may constitute circumstantial evidence that such material previously was displayed on the defendant's computer screen.

The parties posit straightforward arguments regarding the evidentiary value of temporary Internet files containing depictions of child sexually abusive material on a computer hard drive. Defendants assert that the presence of child sexually abusive material in temporary Internet files cannot establish sufficient evidence of knowing possession. According to defendants, the prosecutor must show "something more" to establish knowing possession. Defendants contend that the necessity of "something more" is consistent with the Court of Appeals decision in *People v Girard*, 269 Mich App 15; 709 NW2d 229 (2005). The prosecutor responds that the presence of child sexually abusive material in temporary Internet files can establish knowing possession if the defendant has actual knowledge that the depictions are stored in this manner. Alternatively, the prosecutor asserts that depictions in temporary Internet files are circumstantial evidence that a person previously viewed child sexually abusive material on his computer.

I agree with defendants and the prosecutor that the mere presence of child sexually abusive material in temporary Internet files is not conclusive evidence of knowing possession unless other direct or circumstantial evidence establishes that the defendant

2

knowingly had the power and the intention to exercise dominion or control at a given time over the depictions stored in temporary Internet files. However, I discern no cogent reason to bar or disregard proof of the presence of temporary Internet files containing child sexually abusive material on a computer hard drive. It is one potential source of relevant circumstantial evidence that the defendant knowingly possessed such material in the past.

To establish a violation of MCL 750.145c(4), a prosecutor must prove that a defendant knowingly possessed child sexually abusive material beyond a reasonable doubt. "Possession may be proven by circumstantial as well as direct evidence." *People v Hill*, 433 Mich 464, 469; 446 NW2d 140 (1989). "The question of possession is factual and is to be answered by the jury." *Id*. Ordinarily, "circumstantial evidence and reasonable inferences may be sufficient to prove the elements of a crime." *People v Tanner*, 469 Mich 437, 444 n 6; 671 NW2d 728 (2003). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). Insofar as defendants argue that the presence of temporary Internet files is not persuasive evidence of knowing possession without "something more," defendants mistakenly conflate the weight to be assigned such evidence with its relevance. If the presence of temporary Internet files containing child

3

sexually abusive material is "relevant evidence,"[2] the finder of fact should be able to consider it in determining whether the prosecutor established the knowing possession of child sexually abusive material.[3] Defendants are free to dispute whether the evidence is reliable or whether the contraband depictions were, in fact, knowingly possessed. My analysis does nothing to diminish the prosecutor's burden to prove the case beyond a reasonable doubt. Therefore, I would hold that the presence of child sexually abusive material in temporary Internet files may constitute circumstantial evidence that a defendant knowingly possessed the "electronic visual image" or "computer image" displayed on his computer screen in violation of MCL 750.145c(4).

Additionally, I would conclude that defendants overstate the import of the Court of Appeals decision in *Girard*. It is true that *Girard* stated that "[a]s discussed below, the prosecution had to show more than just the presence of child sexually abusive material in a temporary Internet file or a computer recycle bin to prove that defendant knowingly possessed the material." *Girard*, 269 Mich App at 20. However, *Girard* declined to continue its discussion, observing:

> *We need not address whether the mere presence of a document or*
> *image in a temporary Internet file or in the computer recycle bin would be*

---

[2] See MRE 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.").

[3] See MRE 402 ("All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Michigan, these rules, or other rules adopted by the Supreme Court. Evidence which is not relevant is not admissible.").

*sufficient to prove knowing possession beyond a reasonable doubt* because the evidence adduced below, viewed in a light most favorable to the prosecution, showed that defendant's possession reached beyond such circumstances. Defendant's wife and the complainant testified that they had seen defendant looking at images of adolescents on his computer screen for extended periods, including during the course of engaging in sexual acts. Furthermore, defendant's friend testified that defendant had e-mailed pictures of nude children to him. [*Id*. at 23.]

Because the Court of Appeals explicitly bypassed the issue whether the presence of a document in a temporary Internet file or computer recycle bin constituted knowing possession, I think that defendants misread *Girard* as mandating that a prosecutor show "something more" to prove knowing possession beyond a reasonable doubt.

Consequently, I would further hold that the presence of temporary Internet files containing depictions of child sexually abusive material may be circumstantial evidence that an "electronic visual image" or "computer image" of such material previously was displayed on a defendant's computer screen.

YOUNG, J., concurred with CORRIGAN, J.

S T A T E   O F   M I C H I G A N

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                   No. 138258

STEVEN EDWARD FLICK,

        Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v                                   No. 138261

DOUGLAS BRENT LAZARUS,

        Defendant-Appellant.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I respectfully dissent from the majority's conclusion that intentionally accessing and purposely viewing prohibited images on the Internet amounts to knowing possession of those images under MCL 750.145c(4). Accordingly, I would affirm the circuit court's decision to grant defendant Douglas Lazarus's motion to quash, and I would remand defendant Steven Flick's case to the circuit court for further proceedings consistent with this opinion.

## I. ADDITIONAL FACTUAL BACKGROUND

It is important to understand the significance of the presence of temporary Internet files (TIFs) and deleted TIFs on a computer. When a computer user visits a website, the computer performs two functions simultaneously: (1) it opens and displays the website, and (2) without any indication to the user, it automatically creates TIFs containing copies of the images and other data that the computer must download in order to display the website. Note, *Possession of child pornography: Should you be convicted when the computer cache does the saving for you?*, 60 Fla L R 1205, 1213-1214 (2008). As the prosecution's expert, Detective Joshua Edwards, testified, computers are set by default to automatically delete TIFs after a certain number of days. See also *id.*[1] Thus, unless a user is savvy enough to be aware of this process and change the computer's default settings, TIFs are constantly being saved to the computer's hard drive when a user visits a

---

[1] Detective Edwards agreed that "computers come from the factory" with default settings to "take images from web pages to the temporary Internet file" and that a user is "not in control of what [the user's] computer takes an image of and sends to [the] temporary Internet file." He further testified that a computer user does not have to do something proactive for a temporary Internet file to end up in deleted, or unallocated, space because "[t]he settings can be set to delete those files every 30 days, every 180 days, and that's—the computer can delete those automatically for you." He explained that these default settings can be changed and altered, but he also agreed that there "are always default settings" for the temporary Internet files to be deleted. As noted by the majority, Detective Edwards did testify that some "proactive measure" would have to be taken for a temporary Internet file to be on a computer's hard drive, but he did not specify what that proactive measure is. Given that he also testified that computers "come from the factory" with default settings to automatically create temporary Internet files, it appears that the "proactive measure" he was referencing was viewing a website, not actively saving TIFs to a computer.

website, and later deleted, without any action from or indication to the user.[2] Further, as Detective Edwards testified, both TIFs and the deleted TIFs may remain on the computer's hard drive and can be accessed by someone with expertise on how to do so. But the average computer user does not know how to access TIFs or the deleted TIFs.[3] *Id.* See also *United States v Kuchinski*, 469 F3d 853, 862 (CA 9, 2006). Therefore, it cannot necessarily be inferred from the presence of TIFs on a computer that the computer user knew of the TIFs' presence or manually accessed the TIFs or intended to do so. Further, it also cannot necessarily be inferred from the presence of deleted TIFs on a computer that the computer user manually deleted the files.

The majority misleadingly characterizes some of the relevant facts in these cases to buttress its statement that the defendants did more than "passively view" prohibited images.[4] As noted by the majority, both defendants admitted that they had intentionally paid for access to child pornography websites and knowingly viewed prohibited images

---

[2] Thus, although a computer user may intentionally access and view a website, under a computer's default settings, it is the *computer*, not the user, that creates and deletes the TIFs.

[3] Even after a file has been "deleted," it may be accessible to a user with the proper software and expertise. This is because "deleted" files remain in a computer's unallocated space until they are replaced with another file. Detective Edwards analogized this to a television show recorded on VHS tape that a person has decided not to keep but has not yet taped over.

[4] It appears that these factual errors would not affect the majority's ultimate conclusion because the majority concludes that purposely accessing and viewing prohibited images on a computer screen is, by itself, sufficient to establish possession. I am unsure, however, why the majority finds it necessary to artificially buttress its analysis with misleading factual characterizations if it is truly concluding that knowingly accessing and intentionally viewing images is sufficient to establish possession.

3

online at those websites. TIFs of prohibited images and "deleted" prohibited images were found on their computer hard drives.[5] The majority also implies, however, that defendant Flick actively deleted prohibited images and relies on this to support its argument that defendant Flick did more than passively view prohibited images.[6] Contrary to this assertion, there is no evidence in the record before this Court that either defendant was aware of the TIFs, had accessed the TIFs, or had manually or intentionally deleted TIFs or any other files with prohibited images. Additionally, while there was no allegation that defendant Lazarus had knowingly saved any prohibited images to his computer or accessed TIFs while they were on his hard drive, the majority argues that defendant Lazarus did more than "passively view" images because someone could have accessed the TIFs on his hard drive that his computer automatically created. But, as discussed above, the average computer user is not aware of TIFs and cannot access them, and there was no evidence that defendant Lazarus had done so or knew how to do so. Thus, I do not think the fact that TIFs are theoretically accessible provides any support

---

[5] Although the majority discusses deleted images only in the context of defendant Flick, Detective Edwards testified that defendant Lazarus also had prohibited images on his "unallocated," i.e., deleted, space.

[6] For example, the majority opinion states, "Defendant Flick's admission that he downloaded child sexually abusive material, coupled with [the expert's] report that images of child sexually abusive material had been deleted, sufficiently establishes that at a minimum defendant Flick knowingly had the power and the intention to exercise dominion or control" over the prohibited images, and "a defendant cannot intentionally procure and subsequently dispose of a depiction of child sexually abusive material without having either actual or constructive possession."

4

for the statement that defendant Lazarus did more than "passively view" prohibited images.

Finally, I note that while the prosecution alleged that defendant Flick told a police officer that he had "downloaded" prohibited images, it is unclear from the record before this Court whether defendant Flick admitted that he had actively saved images to his hard drive. Alternatively, he may have merely admitted that his computer had transferred images to his screen for viewing without his actively saving any images.[7] At best, however, the facts pertaining to defendant Flick are identical to defendant Lazarus's, given that he admitted intentionally accessing and viewing prohibited images on websites.

## II. LEGAL ANALYSIS

In addition to disagreeing with the majority's factual assertions, I also disagree with some of its legal analysis. Under MCL 750.145c(4), it is a felony for a person to knowingly possess child sexually abusive material. In these cases, it is undisputed that

---

[7] The confusion arises because the term download has multiple meanings. It is often used to refer to actively saving a copy of a file to a computer's hard drive, see Note, *Possession of child pornography*, *supra* at 1211, but, as the prosecution acknowledged in its brief to this Court, it also can more generally refer to sending files electronically from one computer to another, as is necessary to view a website. It is unclear which meaning defendant intended in his statement because, during the hearing on the motion to quash, defendant Flick's counsel stated, without contradiction from the prosecution, that defendant had never e-mailed, printed, *or saved* any prohibited images to his computer. Consistent with this, in response to the motion to quash, the prosecution focused on the argument that paying to view images is sufficient for possession, stating that "[j]ust because the individual chooses not to save the images does not mean that they were not possessed by the purchaser at the time of purchase."

5

defendants Flick and Lazarus knowingly accessed and viewed child sexually abusive material on their computer screens and that their computer hard drives contained TIFs of child sexually abusive material. The legal question before the Court is therefore whether intentionally accessing and knowingly viewing prohibited images on the Internet constitutes "possession" of these images. The majority holds that it does. I disagree.[8]

As correctly noted by the majority, because "possess" is a word with a unique legal meaning, it should be interpreted according to its meaning under the common law. *Dennis v Robbins Funeral Home*, 428 Mich 698, 703; 411 NW2d 156 (1987). As further noted by the majority, this Court has held that there are two types of possession: actual and constructive. *People v Wolfe*, 440 Mich 508, 520; 489 NW2d 748 (1992). Given this well-established law, I also agree with the majority that either actual or constructive possession of prohibited images would be sufficient to satisfy MCL 750.145c(4). It is clear that viewing images on a website does not constitute actual, or physical, possession, and thus the issue is whether intentionally accessing and knowingly viewing prohibited images amounts to constructive possession.

I generally agree with the majority that, under Michigan law, in order to constitute constructive possession, an ability to exercise dominion and control, without an actual

---

[8] Justice CORRIGAN's concurrence also addresses whether the presence of TIFs on a computer's hard drive, alone, establishes "knowing possession" and whether TIFs are circumstantial evidence of previous possession. As to the first issue, I generally agree that the presence of TIFs on a hard drive, alone, does not establish *knowing* possession, given that computers automatically create and delete TIFs, and, as discussed above, the average computer user is unaware of TIFs or how to exercise dominion and control over them. As to the second issue, it is unnecessary to reach it in these cases.

6

exercise of dominion and control, is sufficient only when the person has the power *and the intent* to exercise dominion or control.  See *People v Konrad*, 449 Mich 263, 273; 536 NW2d 517 (1995), concluding that the defendant constructively possessed drugs because "he had the intention and power . . . to exercise control over them," and *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989), stating that "a person has constructive possession if he 'knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons,'" quoting *United States v Burch*, 313 F2d 628, 629 (CA 6, 1963).[9]  I disagree with the majority, however, on what constitutes constructive possession in this context.

Specifically, I disagree with the majority's application of the power and intention standard to this case.  The majority equates exercising dominion and control, in this context, with a list of actions that a person might take to actively interact with the viewed image, including printing, resizing, saving, sharing, posting, e-mailing, or deleting it.  It therefore concludes that these defendants constructively possessed prohibited images

---

[9] The majority opinion generally agrees with this statement, and cites *Konrad*, *Hill*, and *Burch*, but, confusingly, it also states at one point that "a person who has the power to exercise a degree of dominion or control over 'any child sexually abusive material' is sufficiently culpable to fall within the scope of MCL 750.145c(4)."  The majority states that this statement is a "preliminary review" of the meaning of "possess" and is not intended to be the final standard.  This statement could be read, however, to mean that the power to exercise a degree of dominion and control, without the intent, is sufficient to satisfy the statute because the majority states that the power, itself, is sufficient to "fall within the scope of MCL 750.145c(4)."  Despite the unnecessary confusion created by this statement, I will take the majority at its word.  I urge the lower courts to do the same and assume that the majority is holding that the power *and* the intention to exercise dominion and control are required to satisfy the statute.

7

because they intentionally accessed and viewed the images on a website and, at that point, "knowingly had the power and the intention to exercise dominion or control" over the pictures because they could print, save, e-mail, etc., the images. In other words, the majority does not argue that accessing and viewing the prohibited images constituted an actual exercise of dominion or control. Instead, it argues that because defendants intentionally accessed and viewed the images, defendants must have also had the power *and intention* to take an additional action to exercise dominion and control, such as saving or e-mailing the images.

This argument has one fatal flaw: while defendants clearly had the *power* to exercise dominion and control over the prohibited images, the majority fails to explain what support there is for its conclusion that defendants *intended* to do so. There is no evidence to support this conclusion, at least with regard to defendant Lazarus.[10] Thus, the majority is apparently holding that an intention to exercise dominion and control over prohibited images on a computer screen can be inferred whenever a defendant simply has the power to do so. I do not think that this is a reasonable inference, as it is a giant, and clearly erroneous, logical leap to assume that every time a person intentionally accesses and views images on a website, that person *intends* to save, print, e-mail, or otherwise

---

[10] Defendant Lazarus admitted intentionally paying to access websites with prohibited images and knowingly viewing prohibited images, but there are no allegations that he intended to save, print, e-mail, enlarge or otherwise exercise dominion and control over the prohibited images. As explained above, the facts with regard to defendant Flick are less clear. While it would be sufficient to establish that he exercised dominion and control if he did save prohibited images to his hard drive, if he did not, then the facts of his case are the equivalent of defendant Lazarus's.

exercise dominion and control over those images. Indeed, one could imagine many reasons that a person might view an image on a screen but not intend to save, print, e-mail, or otherwise interact with the image.[11]

Moreover, the foreign authority that the majority offers in support of its conclusion that knowingly accessing and viewing prohibited images is knowing possession is inapposite. The majority quotes *Ward v State*, 994 So 2d 293, 299-300 (Ala Crim App, 2007), an Alabama Court of Criminal Appeals case that concluded that intentionally accessing and viewing an image on a website constitutes constructive possession. The Alabama Court analogized the situation to knowingly viewing drugs on the street and then intentionally picking them up and carrying them home. *Id.* The Alabama case is irrelevant to Michigan law, however, because Alabama has a different, and much broader, standard for constructive possession: whether the person had the *ability* to exercise dominion and control. *Id.* at 301-302. If Alabama law governed in these cases, I would agree that defendants had constructive possession of the images because they had the ability to exercise dominion and control over them. As discussed, however, the definition of constructive possession in Michigan is stricter and requires not merely the ability to exercise dominion and control but also the *power and the intention* to do so. The majority's reliance on this case demonstrates its refusal to acknowledge the

---

[11] For example, a person could want to avoid taking up space on the computer's hard drive or having other household members see the images. Alternatively, as often happens when a person visits a website, the defendant might be content to view the images as they are presented on the website without any additional action.

9

difference between having the ability, or the power, to exercise dominion and control and having the power *and the intention* to do so.

Furthermore, the analogy from the Alabama case on which the majority relies is wholly irrelevant to these cases. The majority claims that the facts of these cases are comparable to a person viewing drugs and then carrying them home, because both demonstrate "the many intentional affirmative steps taken by the defendant to gain actual physical control, or to knowingly have the power and the intention at a given time to exercise dominion or control . . . ." When a person physically carries drugs home, however, the person unquestionably has *actual*, physical possession of the items. Thus, the inquiry is very different from the one required by the facts of these cases, which involve not actual possession but rather constructive possession.

In contrast, as the Prosecuting Attorneys Association of Michigan amicus curiae brief concedes, the federal Courts of Appeals have generally not held that accessing and viewing child pornography, even with the presence of TIFs, could constitute knowing possession when interpreting equivalent language in the federal statute.[12] Only one circuit has been directly confronted with the question whether intentionally viewing and accessing images constituted possession, and it held that a defendant did not possess images merely because he viewed them on a screen and TIFs were consequently found on

---

[12] Like Michigan's statute, the federal statute used to prohibit the knowing possession of child pornography. The statute was amended in 2008, however, and it now prohibits both knowingly possessing prohibited images and knowingly accessing them "with intent to view . . . ." 18 USC 2252A(a)(5). The federal Courts of Appeals interpretation of the statute before amendment, however, is still relevant.

10

his hard drive. *Kuchinski, supra*, 469 F3d at 861-863.[13] Further, while most other federal Courts of Appeals have not addressed the exact issue presented in this case, they have consistently found intentionally accessing and knowingly viewing images on the Internet, and/or the presence of TIFs, to rise to the level of possession only when some other factor demonstrates that the defendant *actually exercised dominion or control* over the images, such as evidence that the defendant manually saved or deleted the images to or from his computer. See, e.g., *United States v Romm*, 455 F3d 990, 998 (CA 9, 2006), stating that "[i]n the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it," and holding that the defendant had exercised dominion and control where he admitted that he viewed and enlarged images, saved them to his hard drive, and then deleted them.[14]

---

[13] A case cited by the majority opinion, *United States v Kain*, 589 F3d 945, 950 (CA 8, 2009), did state that "[a] computer user who intentionally accesses child pornography images on a web site gains actual control over the images," but its analysis has limited utility in this context because the court was interpreting the amended version of 18 USC 2252A(a)(5) discussed in the preceding footnote, and, regardless, the defendant in that case had prohibited images in both TIFs and files that had been manually saved to his computer.

[14] See, also, *United States v Miller*, 527 F3d 54, 66-69 (CA 3, 2008) (the defendant saved files to a zip disk); *United States v White*, 506 F3d 635, 642 (CA 8, 2007) (the defendant saved images to a computer disk, admitted that he had images on his computer, and gave the agent step-by-step instructions on how to access them); *United States v Irving*, 452 F3d 110, 122 (CA 2, 2006) (images were saved in the "My Documents" folder); *United States v Bass*, 411 F3d 1198, 1201-1202 (CA 10, 2005) (the defendant purchased special software to attempt to delete TIFs of child pornography from the computer); *United States v Tucker*, 305 F3d 1193, 1198-1199, 1204 (CA 10, 2002) (the defendant intentionally deleted TIF files).

11

In summary, with regard to defendant Lazarus, I would hold that there was no evidence supporting a charge of knowing possession under MCL 750.145c(4) because there is no evidence that he actually exercised, or intended to exercise, dominion and control over the prohibited images he was viewing. With regard to defendant Flick, I would remand to the trial court to reconsider whether defendant's admission is admissible, and, if it is, whether it is evidence that defendant Flick actually exercised, or intended to exercise, control and dominion over prohibited images.[15]

## III. CONCLUSION

I dissent from the majority's conclusion that defendants knowingly possessed prohibited images merely by intentionally accessing and purposely viewing those images on the Internet. Accordingly, I would affirm the district court's ruling that defendant Lazarus could not be bound over for trial, and I would remand defendant Flick's case for further proceedings consistent with this opinion.

KELLY, C.J., and HATHAWAY, J., concurred with CAVANAGH, J.

---

[15] In the trial court, defendant Flick argued that his admission was inadmissible because there was no corpus delicti absent the statement. The trial court disagreed because, like the majority of this Court, it determined that paying for and viewing a prohibited image was sufficient to establish possession. Given my differing view of what constitutes "possession," however, I would remand to the trial court to reconsider this issue.

12