# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CHRISTOPHER JOHN CZARNIK,

Defendant-Appellant.

UNPUBLISHED
July 3, 2018

No. 338856
Muskegon Circuit Court
LC No. 16-003134-FH

Before: MURRAY, C.J., and MARKEY and TUKEL, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] his conviction for the production of child sexually abusive material, MCL 750.145c(2). Defendant pleaded guilty pursuant to a conditional plea agreement, with a *Cobbs*[2] agreement that his minimum sentence would not exceed 7 years' incarceration. The trial court sentenced defendant to a term of 7 to 25 years' incarceration, as a fourth-offense habitual offender, MCL 769.12. We affirm.

The events that led to defendant's conviction occurred at the West Shoreline Correctional Facility where defendant was serving a prison term for a previous conviction also involving child pornography. On March 26, 2016, a correctional officer conducted a pat-down search of defendant. During the search, the officer found a drawing of a young girl "having sex and performing oral sex on an adult male." The officer also found a hand-written story of a six-year-old child having sex with adults. On April 5, 2016, a Michigan State Police Trooper interviewed defendant, who confessed that he had more drawings and narratives located in his cell and that he views the material as sexual in nature and used it for his own sexual gratification. Correctional officers then seized many materials from defendant's cell, including 10 hand-drawn pictures of children engaging in sexual activities and 16 different writings depicting sexual acts between adults and children. Defendant admitted that he created two of the drawings and identified the two children as being about 12 or 13 and 8 years old. Defendant also admitted that

---

[1] *People v Czarnik*, unpublished order of the Court of Appeals, entered August 14, 2017 (Docket No. 338856).

[2] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

out of the 16 writings, he created 8 of them. In defendant's presentence investigation report, defendant is noted as saying that he draws or writes about child sexually abusive material when he is in a "deviant cycle" as a way to "keep thoughts of molesting children going."

The prosecutor filed a felony complaint alleging that between September 12, 2014, and March 26, 2016, defendant "did arrange for, produce, make, copy, reproduce, or finance any child sexually abusive material; contrary to MCL 750.145c(2)." Defendant filed a motion to quash the information and to dismiss the charge. Defendant argued that the illustrations in question were "cartoon drawings of fictional characters" and, as such, could not qualify as sexually abusive material under the statute. Pursuant to MCR 6.301(C)(2), defendant entered a conditional guilty plea to the charged offense, admitting that he drew "pictures of children in sexually provocative positions," with a provision of the plea agreement including that the trial court still was to rule on his motion to quash the information and that defendant could appeal an adverse ruling on that motion. The trial court took the plea under advisement and noted that if it ended up granting defendant's motion, then it would reject the plea.

After the plea hearing, the prosecutor filed a brief opposing defendant's motion. The prosecutor argued that the hand-drawn illustrations qualified as child sexually abusive material under MCL 750.145c(1)(b) because they satisfied the statutory phrase "appears to include a child," which did not require the materials in question to depict an actual child. In addition, the prosecutor clarified that the charge of producing child sexually abusive material was based not only on the hand-drawn illustrations created by defendant, but also was based on a written manuscript created by defendant that depicted a child engaging in sex acts listed in the statute. Thus, the prosecutor argued that even if the trial court concluded that the hand-drawn illustrations did not satisfy the statutory definition of "child sexually abusive materials," the court should deny the motion because the written stories nonetheless supported the charge.

Defendant thereafter filed a supplemental brief supporting his motion, in which he noted that the conditional guilty plea "was based on the drawings found in his cell." Defendant further argued that if the trial court ended up relying on the stories, then it nonetheless should quash the information and dismiss the charge because the term "depiction" in the definition of "child sexually abusive material" does not encompass "purely verbal descriptions."

The trial court ultimately denied the motion to quash and concluded that defendant was in possession of child sexually abusive material within the ambit of the statutory definition set forth in MCL 750.145c(1)(*o*). In reaching that conclusion, the trial court focused solely on the written manuscript and declined to decide whether the hand-drawn illustrations satisfied the statutory requirements.

Whether conduct falls within the scope of a penal statute is a question of statutory interpretation. Appellate courts review questions of statutory interpretation de novo. *People v Flick*, 487 Mich 1, 8-9; 790 NW2d 295 (2010). "This Court reviews a trial court's decision on a motion to quash the information for an abuse of discretion." *People v Miller*, 288 Mich App 207, 209; 795 NW2d 156 (2010). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012).

Defendant was convicted of a single count of producing "child sexually abusive material," contrary to MCL 750.145c(2).[3] Central to the resolution of this appeal is the proper interpretation of the statutory definition of "child sexually abusive material."

> The overriding goal of statutory interpretation is to ascertain and give effect to the Legislature's intent. The touchstone of legislative intent is the statute's language. The words of a statute provide the most reliable indicator of the Legislature's intent and should be interpreted on the basis of their ordinary meaning and the overall context in which they are used. An undefined statutory word or phrase must be accorded its plain and ordinary meaning, unless the undefined word or phrase is a term of art with a unique legal meaning. When we interpret the Michigan Penal Code, we do so according to the fair import of [the] terms, to promote justice and to effect the objects of the law. [*Flick*, 487 Mich at 10-11 (quotation marks and citations omitted).]

In MCL 750.145c(1)(*o*), the Legislature defined "child sexually abusive material" as follows:

> any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording.

Defendant argues that "depiction" is not meant to include purely textual writings because the statute's definition purportedly shows that it is meant to cover only visual or audio representations. But because the pictures and illustrations defendant drew easily qualify as child sexually abusive material, we need not reach the question of whether his written stories qualify as well.[4]

---

[3] MCL 750.145c(2) provides in pertinent part that "a person who arranges for, produces, makes, copies, reproduces, or finances . . . any child sexually abusive activity or child sexually abusive material for personal, . . . purposes is guilty of a felony . . . ." See also *People v Willis*, ___ Mich App ___, ___; ___ NW2d ___ (2018) (Docket No. 334398); slip op, p 3, lv pending.

[4] Although we granted defendant's application for leave to appeal and limited the appeal to "issues raised in the application and supporting brief," *People v Czarnik*, unpublished order of the Court of Appeals, entered August 14, 2017 (Docket No. 338856), we may address the

Although a bit unwieldy, MCL 750.145c(1)(*o*) ultimately defines "child sexually abusive material," in pertinent part, as any (1) depiction, regardless of how it was produced; (2) picture; or (3) sound recording; where the depiction, picture, or sound recording is of a child, or someone who appears to be a child, engaging in a "listed sexual act."[5] With respect to "depiction," the statute provides that the term "include[es] a developed or undeveloped photograph, *picture*, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image." MCL 750.145c(1)(*o*) (emphasis added). Thus, "picture" is actually covered twice in the definition of child sexually abusive material: once under the umbrella of "depiction" and again as its own separate category. As a result, under the statute, a picture which shows a child, or appears to show a child, engaging in a listed sexual act is "child sexually abusive material."

The statute does not provide a definition for the term "picture," so we employ its normal meaning and we may consult a dictionary in construing its proper definition. See *People v Thompson*, 477 Mich 146, 151-152; 730 NW2d 708 (2007). *Merriam-Webster's Collegiate Dictionary* (11th ed) defines the word "picture" to mean "a design or representation made by various means (as painting, *drawing*, or photography)." (Emphasis added.) Thus, defendant's drawings, because they represent children engaging in a listed sexual activity, are "picture[s]" under the statute.

In his motion to quash the information at the trial court, defendant conceded that the drawings portrayed a six-year old girl engaging in a listed sexual activity. Despite this concession, defendant argued that "cartoon drawings of a fictional character" do not fall under the statute because "they do not convey the impression that they capture a live performance of a sex act by an actual child." We find this argument unpersuasive. While we agree that the drawings do not portray an actual, identifiable child, the statute also prohibits any material that "appears to include a child engaging in a listed sexual act." MCL 750.145c(1)(*o*). And MCL 750.145c(1)(b) states:

"Appears to include a child" means that the depiction appears to include, or conveys the impression that it includes, a person who is less than 18 years of age, and the depiction meets either of the following conditions:

(*i*) It was created using a depiction of any part of an actual person under the age of 18.

___

illustration aspect of defendant's conviction because it is an inherent part of the primary issue defendant raised—whether his motion to quash the information and dismiss the case should have been granted. In other words, assuming we agreed with defendant that his written narratives did not qualify as child sexually abusive material, reversal would not be warranted unless we also found that his illustrations, which were the basis for his guilty plea, also did not qualify.

[5] "Listed sexual act" is defined in MCL 750.145c(1)(i). It is not disputed that defendant's stories and illustrations portrayed enumerated sexual acts.

(*ii*) It was not created using a depiction of any part of an actual person under the age of 18, but all of the following apply to that depiction:

> (A) The average individual, applying contemporary community standards, would find the depiction, taken as a whole, appeals to the prurient interest.

> (B) The reasonable person would find the depiction, taken as a whole, lacks serious literary, artistic, political, or scientific value.

> (C) The depiction depicts or describes a listed sexual act in a patently offensive way.

Thus, the statute is divided such that subpart (*i*) covers depictions that were created using any part of an actual person and subpart (*ii*) covers depictions that were not created using any part of an actual person. Under subpart (*ii*), a depiction is criminalized, irrespective of whether it portrays an actual, real-life person, so long as it meets the definitions in MCL 750.145c(1)(b); that is, the depiction "[a]ppears to include a child" meaning that it *appears* to include, or *conveys* the impression that it includes, a person who is less than 18 years of age. Thus, defendant's argument that his conduct did not violate the statute because his drawings were of a fictional child "Becky" instead of a real child necessarily fails because the drawings unmistakably conveyed the impression that a person less than 18 years of age was engaging in sexual activity. We also note that, while the drawings were hand-drawn, there is no mistaking that the drawings represented a human child—they were not outlandish "cartoons" that did not reasonably resemble a person. As such, the drawings were more than sufficient to meet the definitions of subsection (*ii*).

Further, it should be highlighted that because the materials at issue here did not involve an actual person under the age of 18, MCL 750.145c(1)(b)(*ii*)(A)-(C) requires that the material be obscene, as defined by the United States Supreme Court in *Miller v California*, 413 US 15, 24; 93 S Ct 2607; 37 L Ed 2d 419 (1973), which obviates any First Amendment concerns. See *People v Boomer*, 250 Mich App 534, 541; 655 NW2d 255 (2002) ("[T]he First Amendment does not protect obscene speech . . . .").[6]

---

[6] This case does not require us to address whether the illustrations meet the requirements of MCL 750.145c(1)(b)(*ii*)(A)-(C) because the sole argument raised by defendant in his motion to quash the information was that the statute did not extend to drawings of fictional characters that "do not involve the real or apparent abuse of an actual child." Consequently, with defendant's guilty plea, he admitted that the drawings met all of the other requirements of the statute, including the incorporation of the obscenity requirements from *Miller*, 413 US at 24. And because defendant's drawings, which, as part of the factual basis for his guilty plea he admitted creating and which for the reasons we have stated in this opinion were legally sufficient to support the plea, we decline to consider as unnecessary the question of whether defendant's fictional stories, standing alone, constituted a violation of the statute.

Although the trial court did not rule on the illustration aspect of defendant's case, we affirm the denial of his motion to quash the information on these alternative grounds. See *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998).

Affirmed.

/s/ Jane E. Markey
/s/ Jonathan Tukel