# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Complaint of ROBERT TAYLOR for Judicial
Investigation.

---

ROBERT TAYLOR,

              Petitioner-Appellant.

UNPUBLISHED
October 27, 2015

No. 327893
Charlevoix Circuit Court
LC No. 15-012525-PZ

---

Before: M. J. KELLY, P.J., and MURRAY and SHAPIRO, JJ.

PER CURIAM.

Petitioner sought a judicial investigation (one-person grand jury) under MCL 767.3. The petition alleged that the subject of the complaint violated election law. It also contained allegations of an episode of domestic violence, misuses of a county credit card, and an instance of forced entry of a storage facility. After consideration of the petition and the documents submitted in support, the trial court issued an opinion and order declining to initiate grand jury proceedings and denying the petition. Petitioner appeals as of right. For the reasons stated in this opinion, we affirm in part, vacate in part, and remand for further proceedings.

## I. STATUTORY REQUIREMENTS

MCL 767.3 provides in pertinent part:

> Whenever by reason of the filing of any complaint, which may be upon information and belief, or upon the application of the prosecuting attorney or attorney general, any judge of a court of law and of record shall have probable cause to suspect that any crime, offense or misdemeanor has been committed within his jurisdiction, and that any persons may be able to give any material evidence respecting such suspected crime, offense or misdemeanor, such judge in his discretion may make an order directing that an inquiry be made into the matters relating to such complaint, which order, or any amendment thereof, shall be specific to common intent of the scope of the inquiry to be conducted, and thereupon conduct such inquiry. In any court having more than 1 judge such order and the designation of the judge to conduct the inquiry shall be made in accordance with the rules of such court. Thereupon such judge shall require such

-1-

persons to attend before him as witnesses and answer such questions as the judge may require concerning any violation of law about which they may be questioned within the scope of the order. The proceedings to summon such witness and to compel him to testify shall, as far as possible, be the same as proceedings to summon witnesses and compel their attendance and testimony. The witnesses shall not receive any compensation or remuneration other than witness fees as paid witnesses in other criminal proceedings. The witness shall not be employed in any capacity by the judge or by any person connected with such inquiry, within the scope of the inquiry being conducted. Whenever a subpoena is issued by the judge conducting the inquiry, commanding the appearance of a witness before the judge forthwith upon the service of such subpoena, and, following the service thereof, the witness arrives at the time and place stated in the subpoena, the judge issuing the same shall be forthwith notified of the appearance by the officer serving the subpoena, and the judge forthwith shall appear and take the testimony of the witness. Any person called before the grand jury shall at all times be entitled to legal counsel not involving delay and he may discuss fully with his counsel all matters relative to his part in the inquiry without being subject to a citation for contempt. The witness shall have the right to have counsel present in the room where the inquiry is held. All matters revealed to the attorney shall be subject to the requirements of secrecy in section 4, and any revelation thereof by the attorney shall make him subject to punishment as provided in section 4. No testimony shall be taken or given by any witness except in the presence of the judge.

Further, MCL 767.4 sets forth the standard by which the grand juror shall determine whether or not to indict any person and if so how to proceed:

> If upon such inquiry the judge shall be satisfied that any offense has been committed and that there is probable cause to suspect any person to be guilty thereof, he may cause the apprehension of such person by proper process and, upon the return of such process served or executed, the judge having jurisdiction shall proceed with the case, matter or proceeding in like manner as upon formal complaint. . . .

Both MCL 767.3 and MCL 767.4 reference "probable cause." However, the nature and quantum of evidence available at the two stages of the proceeding are not the same. A request for a grand juror under MCL 767.3 may be made on "information and belief" and is more likely to be based upon documentary evidence and hearsay rather than sworn testimony subject to cross-examination. In contrast, a grand juror under MCL 767.4 may require testimony and production of evidence pursuant to subpoena, and, by that power, may undertake a more probing and thorough investigation than the petitioner. Accordingly, while each provision requires a finding of probable cause, the former requires probable cause sufficient to justify a formal and confidential investigation, while the latter requires probable cause sufficient to bring criminal charges and have the matter heard in a public trial. Additionally, MCL 767.3 provides that if the judge "shall have probable cause to suspect that any crime, offense or misdemeanor has been committed within his jurisdiction . . . such judge *in his discretion may* make an order directing that an inquiry be made into the matters relating to such complaint[.]" (emphasis added).

Accordingly, the court may exercise its discretion not to empower a grand juror even in cases where probable cause exists.

## A. VIOLATION OF ELECTION LAW

Petitioner first alleges that the subject of the investigation violated Michigan election law, specifically MCL 168.848(2), by failing to file a Campaign Finance Compliance Affidavit prior to taking office as required by MCL 168.848(1)(b).[1] In support, petitioner provided a copy of the Affidavit, which demonstrates that it was executed and filed on October 29, 2013, i.e. several months after the subject took office. Petitioner also alleges that when the subject finally executed and filed the Affidavit, it contained a false statement in violation of MCL 168.848(3). Specifically, petitioner alleged that when the Affidavit was signed and filed, the subject falsely stated that "at this date, all statements, reports, late filing fees, and fines due from me or any Candidate Committee organized to support my election to office under the Michigan Campaign Finance Act, PA 388 of 1976, have been filed or paid." As evidence that the statement was false, petitioner submitted records from the Bureau of Elections indicating (1) that the subject had failed to timely report three late contributions as required by MCL 169.232(1), and (2) that this alleged error was not cured until May 2014, which was well after the submission of the Affidavit that stated all reports had been filed.

The trial court's decision not to convene a grand jury rested on its conclusion that "[t]he matters alleged by petitioner were duly investigated by the State Elections Bureau [with whom the subject] entered into a conciliation agreement where the subject agreed to pay $1500 for release of all claims arising out of the matters investigated." Petitioner argues, however, that the allegations investigated by the Bureau did not include the timeliness or accuracy of the Affidavit. Rather, the Bureau considered three alleged violations of the Michigan Campaign Finance Act, MCL 169.201 et seq.[2] The Bureau's investigation was resolved with a conciliation agreement,[3] which required the subject to (1) file amended pre-primary and post-primary campaign finance statements to reflect the addresses of some contributors and show a cumulative total; (2) file a late contribution report listing three primary campaign contributions received after the closing date for the pre-primary campaign statement;[4] (3) file amended pre- and post-primary campaign finance statements to supply certain addresses and cumulative totals for purposes of compliance with MCL 169.226(1)(e); and (4) pay a fee equal to the amount of the now late-reported campaign contributions.

---

[1] MCL 168.848(1)(b) requires an elected candidate subject to the Campaign Finance Act, whose candidate committee received or spent more than $1,000 on the campaign, to file a postelection statement before taking office. Subsection (2) sets forth misdemeanor penalties for failure to do so.

[2] The Bureau only found support for two or the three alleged violations.

[3] See MCL 169.215(10).

[4] See MCL 169.232.

In relying on the conciliation agreement as its basis not to convene a grand jury, the trial court reasoned:

> While the Bureau's fines are civil penalties, and these matters are criminal, Michigan law provides a safe harbor for violators of campaign finance law. If the violator enters into a conciliation agreement, that agreement is a complete bar to prosecution for any matter related to the agreement, civil or criminal, unless that agreement is violated. Therefore, this Court cannot find probable cause to believe that the subject is guilty of the charges involving campaign financing unless there is probable cause to believe that the subject violated the conciliation agreement. Such evidence has not been presented, and it appears that the subject has in fact complied with the terms of the conciliation agreement.

In so ruling, the trial court read the conciliation agreement too broadly. The conciliation agreement addressed only alleged violations of the Campaign Finance Act, not of the Michigan election law, MCL 168.1 *et seq.*, generally, or MCL 168.848 in particular. More specifically, the Bureau's determinations that the subject, as a candidate, had failed to supply addresses and cumulative totals and had failed to report late contributions does not bear on the current allegations that, as the public-officer-elect, the subject failed to file a Compliance Affidavit prior to taking office in violation of MCL 168.848, and that the Affidavit he eventually filed contained false statements.

The petition for judicial investigation also requested an investigation into whether the investigation subject committed perjury in violation of MCL 168.936 by signing the Affidavit on October 29, 2013 stating that all reports due had been filed even though the subject had, in fact, not filed a report for receiving late contributions as was later determined by the Bureau.[5]

The trial court declined to act on the perjury allegation, reasoning that "potential perjury would also have been considered by the Bureau" during its investigation and the resultant conciliation agreement. However, we find no such indication in the record. Neither the conciliation agreement nor the letter proposing it included any indication that the Bureau considered whether the failure to file the relevant late contribution report rendered false the subject's earlier attestation that *all* required reports had been filed.

In an alternative basis for its ruling, the trial court reasoned:

[T]he mere fact that the subject filed his post-election campaign finance complaint affidavit in October of 2013 and the fact that apparently these earlier contributions were not reported in a late contribution report does not give rise in this Court's mind to a finding of probable cause that the subject committed perjury in signing the October of 2013 report.

---

[5] MCL 168.936 subjects persons committing perjury under the Election Law to a fine of up to $1,000, imprisonment for up to five years, or both.

The judge emphasized that the perjury statute in the Penal Code, MCL 750.423, targets persons "willfully" offering false statements under oath,[6] and noted that actionable perjury "traditionally required that a person knowingly made a false statement while under obligation not to do so and is similar to fraud." However, MCL 168.848(3) sets out a different standard, providing that "[m]aking a false statement in a postelection statement required under subsection (1) is perjury, punishable as provided in [MCL 168.936]." This requires that the statement be false, but does not include a willfulness element.

Accordingly, neither of the trial court's stated grounds are sufficient to support its finding of no probable cause and we vacate this portion of the trial court's opinion. We note, however, that the Secretary of State is the chief elections officer for the state, and is empowered to address alleged violations of both the election law and the campaign finance act. See MCL 168.31, MCL 168.32, and *Fitzpatrick v Secretary of State*, 176 Mich App 615, 618; 440 NW 2d 45 (1989). Petitioner appropriately availed himself of these administrative procedures to address several violations of the campaign finance act based on facts interrelated with the affidavit issue he presents to the courts. Though not required, he could have also presented this issue as well, since the affidavit was filed two days before petitioner filed the complaint with the secretary of state. On remand, the trial court shall reconsider the question of probable cause and, if it finds probable cause, shall consider all the information before it, including the subject's intent and petitioner's failure to fully utilize the secretary of state's administrative procedures, and exercise its discretion whether to appoint a grand juror.

## B. DOMESTIC VIOLENCE & INTERFERENCE WITH AN ELECTRONIC DEVICE

Petitioner asserted—and provided exhibits to demonstrate—that several years ago, the investigation subject and his wife were involved in a domestic disturbance that resulted in the wife calling 911 and the arrival of police on the scene. After considering the proffered evidence, the trial judge made a factual finding that there was not probable cause, and we review her decision on an abuse of discretion standard. See *People v Flick*, 487 Mich 1, 9; 790 NW2d 295 (2010). The trial court recognized that there was evidence of a dispute that involved some degree of physical contact, but she relied on the fact that the subject's wife was uninjured and that her statements to the police were inconsistent in several important respects. She also noted that the officers who were on the scene and able to personally observe the disputants decided not to make any arrests. After reviewing the record, we cannot say that the trial judge's ruling was an abuse of discretion and so affirm.

## C. COUNTY CREDIT CARD

Petitioner also alleged that the subject used a credit card for personal business several times even though the card was issued to the county office to which the subject was elected and was for official business. Petitioner alleged violations of MCL 750.174 (embezzlement), MCL

---

[6] MCL 750.423(1) states as follows: "Any person authorized by a statute of this state to take an oath, or any person of whom an oath is required by law, who willfully swears falsely in regard to any matter or thing respecting which the oath is authorized or required is guilty of perjury . . . ."

750.175 (embezzlement by public officials), MCL 750.157n (removing, retaining, secreting, or using without permission another person's financial transaction device), and MCL 750.490a (using a governmental entity's credit for other than official purposes).

The trial court summarized the factual underpinnings of this issue as follows:

During the months of December 2013 and March 2014, the subject made one purchase each month for personal use on his county credit card. Each purchase was less than $10, and one was reimbursed. During the months of June, July, and August of 2014, the subject charged over $500 to his county credit card that was attributable to personal use. After the close of the July-August billing cycle in mid-August, the subject was sent a letter advising him that the county credit card was for county use only. The subject reimbursed the county for all his personal expenses for those months plus a late fee. After this, he used his card for personal use in August again. Again, he reimbursed the county for these personal charges.

The court concluded that the subject's having reimbursed the county for his private purchases, at least in some instances without being prompted to do so, indicated that the subject lacked the intent to defraud the county for purposes of embezzlement. See MCL 750.174; MCL 750.175. The court additionally concluded that the subject himself was the proper holder of the financial device he was accused of misusing, and, as a result, he could not be deemed to have used that device without the cardholder's consent for purposes of unlawful use of a financial transaction device. See MCL 750.157n. We find no error in these conclusions.

As to MCL 750.490a, the court stated, without elaboration, that it did not find probable cause to investigate the allegation that the subject used a governmental credit card to purchase items that were not for resale or use in the course of official business. As that statute is silent on the issue of consent or intent to defraud, we take the court's conclusion that probable cause was lacking as a determination that the actual victimization of the county or its citizens was insignificant, and also as a discretionary determination that the matter was not worthy of a further investment of public resources to investigate. Because the court relied on evidence that any unlawful conduct under that statute was *de minimis*, we conclude that the judge's exercise of discretion was not a result lying outside the range of reasonable and principled outcomes. Thus, the court did not err in declining to pursue petitioner's allegations relating to misuse of a county credit card.

### D. WRONGFUL ENTRY OF A STORAGE FACILITY

Petitioner finally asserted that the subject wrongfully entered a storage facility. The circuit court disposed of petitioner's allegations in this regard as follows:

Petitioner alleges that one [Mr.] Kern, if called to testify, would testify that the subject had rented storage space from Mr. Kern. After subject's check bounced, the owner of the storage facility informed the subject and changed the lock on the storage unit. Allegedly, the subject then cut the lock on his storage unit and entered another storage unit.

In order to begin an inquiry, the judge must first have probable cause. The petition attaches no affidavits or other documentary evidence to establish that the events described ever occurred. Therefore, no probable cause exists.

Petitioner insists that his petition "was signed on knowledge, information and belief," contained detailed factual allegations concerning the subject's breaking into a storage facility, and named a specific individual as a key witness and the only person who would have to be interviewed. Petitioner also cites authority for the proposition that hearsay may constitute probable cause to issue an arrest warrant.

However, petitioner's argument does not expose error in the circuit court's reasoning. A "man's mere belief that another is guilty is not probable cause, unless that belief is founded upon reasonable grounds of suspicion, or upon information of such a reliable kind, and from such reliable sources . . . such as would induce an impartial and reasonable mind to believe in the guilt of the accused." *Matthews v Blue Cross and Blue Shield of Mich*, 456 Mich 365, 387-388; 572 NW2d 603 (1998) (internal quotation marks and citation omitted) (omission in original). In alleging an unlawful entry, petitioner offered no affidavits or other competent evidence that any such incident occurred, and he did not assert that he had personal knowledge of the matter or that he received such information second-hand from personal communications with the witness he nominated for the investigation or from any other source with personal knowledge.

Accordingly, the court did not err in declining to empanel a grand juror to investigate these allegations.

## II. CONCLUSION

For the reasons stated, we vacate the order below insofar as it found no probable cause in connection with the alleged violations of the election law. We remand this case to the trial court to decide that aspect of the petition anew, consistent with this opinion. In all other respects, we affirm. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Douglas B. Shapiro