# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

RAYMOND CHARLES COLVILLE,

Defendant-Appellant.

UNPUBLISHED
November 29, 2018

No. 336405
Oakland Circuit Court
LC No. 2015-255034-FH

Before: MURRAY, C.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of one count of manufacturing marijuana over 45 kilos, MCL 333.7401(2)(d)(i), one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1), and two counts of maintaining a drug house, MCL 333.7405(1)(d). Defendant was sentenced to 2 to 15 years for manufacturing marijuana, two years for felony-firearm, and 270 days for each count of maintaining a drug house. We affirm.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

On May 8, 2015, Ferndale Police Officer Antonio Proulx was dispatched to 695 Livernois because Jill Robinson of the Oakland County Treasurer's office had called the Ferndale police to report an illegal marijuana growing operation at that address. As part of her report, Robinson stated that the house was owned by Oakland County, and granted the police permission to enter the house. When Officer Proulx arrived, he detected a strong odor of marijuana from the sidewalk, and noticed an air conditioning unit operating in a basement window. He then entered the house through the open garage door, and proceeded to the basement through an unlocked door. In three separate rooms in the basement, Officer Proulx saw multiple marijuana plants in various stages of growth. He also saw a Ferndale citation posted on the front door, citing "Ray Colville" at 420 St. Louis Street in Ferndale for having left the windows boarded up for several months. Officer Proulx notified his supervisor, who called the Oakland County Narcotics Enforcement Team (NET).

Detective Matt Goebel, Ferndale's NET officer, called another NET member, Detective Paul Kinal of the Southfield Police Department, and asked him to proceed to the Livernois address. Detective Kinal met with Officer Proulx when he arrived, and then walked around the house on the sidewalk. He testified that the windows were boarded up, and the house appeared

-1-

to have fire damage and be vacant. He saw that there was a garage attached to the house by a breezeway, and noticed an air conditioning vent near the breezeway, as well as a strong odor of marijuana. Detective Kinal proceeded to enter the house through the open garage door, opened a door that led to the breezeway, and continued through a door in the breezeway that led to the basement. In the garage was a 1975 Lincoln, with a registration in the glove box listing defendant as the owner, and his address as 420 St. Louis Street. There were boxes of documents in the breezeway, several of which also listed defendant's address as 420 St. Louis Street. When Detective Kinal entered the basement, he also saw three rooms containing a large number of marijuana plants in various stages of growth, along with fans and high-density lights.

When Detective Goebel arrived at 695 Livernois, he talked to the officers already there before completing his affidavit for a search warrant, which included some information about what they had already found at the scene. The NET team found and removed a total of 70 plants, which were later tested and determined to be marijuana. Based on the evidence seized at 695 Livernois, Detective Goebel obtained a search warrant for the address listed as defendant's home—420 St. Louis. There, the officers found 75 marijuana plants in the basement and seven in the backyard, some marijuana in a box and a jar, and drug paraphernalia such as scales, pipes, and a butane dispenser. They also found three cell phones, multiple keys in the kitchen cupboard—some labeled with addresses—an Oakland County tax receipt showing that defendant had paid taxes on five properties (including 695 Livernois) the previous month, and a.40-caliber Glock handgun, which was registered to defendant, under the mattress of the only bed in the house. According to Detective Goebel and another officer who interviewed defendant, defendant told them that he lived at 420 St. Louis and the plants there were his. He said he owned 695 Livernois, but the marijuana there belonged to a friend, whom he had required to move out the month before for stealing plants. Finally, he told the officers that he helped his mother grow plants at a vacant house at 23040 Manistee, where she kept 60 plants.

Detective Goebel then obtained a search warrant for 23040 Manistee, where they found and confiscated exactly 60 plants in the basement. A total of 200 plants of the 212 confiscated were tested and found to have a separate root system and to contain Delta 9 THC as the active ingredient.

## II. MOTION TO SUPPRESS

Defendant first argues that the trial court erred when it denied his motion to suppress, as well as his request for a *Franks*[1] hearing, included therein. We review a trial court's decision whether to hold an evidentiary hearing, including a *Franks* hearing, for an abuse of discretion. *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017). " 'A trial court necessarily abuses its discretion when it makes an error of law.' " *Id*., quoting *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 274; 884 NW2d 257 (2016). Whether a defendant is entitled to a *Franks* hearing is an issue of constitutional law. *Franklin*, 500 Mich at 102-103, citing *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978). We review constitutional questions de novo. *People v McCuller*, 479 Mich 672, 681; 739 NW2d 563 (2007).

---

[1] *Franks v Delaware*, 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978).

A criminal defendant is constitutionally entitled to a hearing to challenge the truth of statements made by an affiant in support of a search warrant if the defendant can make a substantial preliminary showing that the affiant either engaged in a deliberate falsehood or exhibited a reckless disregard for the truth. *Franks*, 438 US at 155-156. A substantial preliminary showing requires allegations that the affiant made specific statements in the affidavit that were deliberately false or made with reckless disregard for the truth, an offer of proof, a statement of supporting reasons, and either affidavits or sworn statements of witnesses, or a satisfactory explanation for their absence. *Franklin*, 500 Mich at 103, citing *Franks*, 438 US at 171-172. If the defendant fails to make this showing, he is not entitled to a *Franks* hearing. *Franklin*, 500 Mich at 103.

In *Franklin*, the police officer's affidavit stated that the affiant had received information from a confidential informant, who had provided reliable information in other cases, that there was marijuana trafficking occurring at a certain address. Among other things, the officer stated that he had set up surveillance and observed five unknown people within 30 minutes walking up to the main front entry door, being let in through a security gate, and leaving within one minute. *Franklin*, 500 Mich at 95-96. The defendant's sole offer of proof in support of his request for a *Franks* hearing was "his own affidavit stating that his front door had a locked security gate that required a key and had not been used in approximately six months." *Id*. at 97. The trial court found that the defendant had failed to make the necessary substantial showing, but nonetheless granted the *Franks* hearing because the affiant had failed to supply sufficient information to show that the confidential informant was credible. *Id*. at 97-98.

On appeal, a panel of this Court agreed with the trial court that the defendant in *Franklin* was not constitutionally entitled to a *Franks* hearing because he failed to make the required substantial preliminary showing. *People v Franklin*, unpublished per curiam opinion of the Court of Appeals, issued October 20, 2015 (Docket No. 322655), p 4. Additionally, however, the panel decided that the trial court had abused its discretion by holding the hearing despite that failure. *Id*. The Supreme Court did not disturb the panel's holding that the defendant in *Franklin* had failed to make the required substantial preliminary showing for a *Franks* hearing, but instead held that a trial court may exercise its discretion and grant a *Franks* hearing even when a defendant is not constitutionally entitled to a hearing. *Franklin*, 500 Mich at 110-111.

In the instant case, defendant failed to offer any proof whatsoever in support of his initial request for a *Franks* hearing, beyond his unsupported allegations. The only exhibits attached to the motion to suppress were the four affidavits and four search warrants obtained for each of the different properties purportedly owned by defendant. And defendant included no evidence of any kind in support of his allegation that Detective Goebel had either engaged in a deliberate falsehood or exhibited a reckless disregard for the truth. Because defendant offered nothing beyond conclusory allegations, he failed to make a substantial preliminary showing that Detective Goebel's statement about the ownership of the house was deliberately false or made with reckless disregard for the truth. Therefore, defendant was not constitutionally entitled to a *Franks* hearing, and the trial court did not err in denying his request.

We next address defendant's argument that the trial court erred in denying defendant's motion to suppress because the original entry into 695 Livernois was unlawful, as no warrant existed. But even if we assume the validity of this argument, we hold that the trial court did not

err in denying defendant's motion to suppress because the evidence would inevitably have been discovered even if the officers had not entered the house when they did.

We review a trial court's decision on a motion to suppress evidence, including any underlying issues of law, de novo. *People v Mullen*, 282 Mich App 14, 21; 762 NW2d 170 (2008). The factual findings underlying the trial court's decision are reviewed for clear error. *People v Martin*, 271 Mich App 280, 297; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008).

"The inevitable discovery exception generally permits admission of tainted evidence when the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been revealed in the absence of police misconduct." *People v Stevens (After Remand)*, 460 Mich 626, 637; 597 NW2d 53 (1999). The purpose of the exclusionary rule is not "to put the prosecution in a worse position than if the police officers' improper conduct had not occurred, but, rather, it is to prevent the prosecutor from being in a better position because of that conduct." *Id*. at 640-641. When evidence inevitably would have been discovered, admitting the evidence does not put the prosecution in a better position that it would have been had the police initially provided all the necessary information to establish probable cause, but excluding it would put the prosecution in a worse position than it would have been absent any misconduct. *Id*. at 642.

The inevitable discovery doctrine applies here because, had Detective Goebel investigated the possibility or likelihood of an illegal grow further before the officers entered the property, he almost certainly would have established probable cause to enter. Officer Proulx testified at trial that he was the first officer on the scene, that when he walked around the house on the public sidewalks he smelled a strong odor of marijuana, and that the house appeared abandoned despite a working air conditioning unit in the basement window.[2] Assuming Officer Proulx had the requisite training, this alone would have established probable cause. See generally *People v Kazmierczak*, 461 Mich 411, 421-422; 605 NW2d 667 (2000), and specifically as to the smell of marijuana emanating from a home, see *United States v Elkins*, 300 F3d 638, 659-660 (CA 6, 2002), citing *United States v Tobin*, 923 F2d 1506, 1512 & n 4 (CA 11, 1991). Consequently, we conclude that the marijuana in the home would have been inevitably discovered based on the independently, and legally obtained, information regarding the circumstances at the house.

### III. IMPARTIAL JURY/INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he was denied his right to a fair trial by an impartial jury when the trial court failed to investigate further a report that a juror had spoken to a court clerk about a witness during a lunch break. And he asserts that his trial counsel provided ineffective assistance by failing to request a hearing or move for a mistrial on this basis.

---

[2] According to the officers, the house had numerous windows boarded up and appeared to have fire damage in several locations.

Because defendant failed to raise either issue below, both issues are unpreserved. We review unpreserved, nonstructural issues of constitutional law for plain error affecting substantial rights.[3] *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. A ruling that contradicts clearly established law is plain error. *Id*. at 770. An error shows prejudice when it affects the outcome of the proceedings in the lower court. *Id* at 763. The burden of establishing these three elements is on the defendant. *Id*. at 763. Once a defendant meets this burden of proof, the appellate court must still decide whether reversal is warranted. Reversal is warranted if the error resulted in an innocent person being convicted, or had a serious effect on the "fairness, integrity or public reputation of judicial proceedings." *Id*. (quotation marks and citation omitted).

## A. JUROR MISCONDUCT

In this case, the jurors were dismissed for lunch at the close of proofs. When court was once again in session, the trial court addressed the jurors as follows:

> Please be seated. Before we start, Ladies and Gentlemen, one of my clerks indicated to me that . . . one of the jurors was behind her in the line . . . in the cafeteria downstairs, and that juror tapped my clerk's shoulder . . . and said . . . a comment[] on a witness. She indicated she could not talk to the juror, obviously, about the case.

> So, just as a reminder, she's not being rude. She's been instructed, just like the attorneys have been instructed, the parties have been instructed, the officers, that they are not to speak to any of you. You're not to speak to them. It would be improper to get any information or commentary or anything. So it's just a reminder that—to please not talk to anyone about the case until you are deliberating in the jury room, and then you're only to talk amongst yourselves. And to not let us know what's going on until you have a verdict or unless there's a question."

---

[3] Defendant argues that the alleged error regarding juror misconduct constitutes structural error. Structural errors are not subject to the harmless error analysis but require automatic reversal. *People v Graves*, 458 Mich 476, 482; 581 NW2d 229 (1998). Structural errors have been found only in cases of "complete denial of counsel, a biased trial judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and defective reasonable-doubt instructions." *People v Cain*, 498 Mich 108, 117 n 4; 869 NW2d 829 (2015). Additionally, the Michigan Supreme Court has held that juror misconduct in the form of lying about one's qualification to be a juror is not structural. *Id*., citing *People v Miller*, 482 Mich 540, 556; 759 NW2d 850 (2008). Thus, the issue of whether to question jurors is not structural.

Defendant did not object or ask the trial court to question the jurors. The trial court then proceeded with closing arguments.

All criminal defendants have a constitutional right to "a speedy and public trial, by an impartial jury." US Const, Am VI; Const 1963, art 1, § 20. See also *People v Miller*, 482 Mich 540, 547; 759 NW2d 850 (2008). Not every instance of juror misconduct warrants relief, however; only those that "affect the impartiality of the jury or disqualify them from exercising the powers of reason and judgment." *People v Nick*, 360 Mich 219, 230; 103 NW2d 435 (1960) (quotation marks and citation omitted). "Trivial acts of misconduct" do not warrant relief because they do not cast doubt on whether the trial was fair and impartial, or whether the verdict was legitimate. Additionally, a new trial is granted for juror misconduct only if it causes substantial harm to the defendant. *Id*. See also *People v Dunigan*, 299 Mich App 579, 586; 831 NW2d 243 (2013).

"Prejudice must be shown, or facts clearly establishing the inference that it occurred from what was said or done." *People v Fetterley*, 229 Mich App 511, 545; 583 NW2d 199 (1998). In other words, "[b]efore this Court will order a new trial on the ground of juror misconduct, some showing must be made that the misconduct affirmatively prejudiced the defendant's right to a trial before an impartial and fair jury." *Id*.

Defendant has failed to make any showing that the juror's trivial act of misconduct affirmatively prejudiced his right to an impartial and fair jury. There are no facts in the record that even suggest that the jury was exposed to extraneous influences, nor is there anything demonstrating that the juror's improper act affected the legitimacy of the verdict.

Perhaps because he could not meet his burden, defendant argued instead that despite its considerable discretion regarding whether to hold an evidentiary hearing, the trial court had a duty to investigate further. This is an erroneous statement of law, and the cases on which defendant relied do not support his argument. A trial court's decision not to question jurors will not be held to be plain error when there are no facts or circumstances indicating that a juror or jury has been exposed to improper extraneous influences, or that their ability to render a fair and impartial verdict has been compromised. See *People v Jackson*, 292 Mich App 583, 592-593; 808 NW2d 541 (2011). The trial court did not err in deciding not to question the jurors in this case. The clerk, presumably a trusted member of the judge's staff, informed the judge what had happened. A comment was made by a juror, the clerk said she could not discuss the case, and the matter ended there. There was nothing to suggest that the impartiality of any juror had been compromised. See *Id*. at 593.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

When a defendant fails to develop a record on his ineffective assistance of counsel argument in the trial court, our review is limited to the record as it exists. *People v Snider*, 239 Mich App 393, 423; 608 NW2d 502 (2000). Ineffective assistance of counsel arguments present mixed questions of law and fact. *People v Douglas*, 496 Mich 557, 566; 852 NW2d 587 (2014). This Court reviews factual questions for clear error and questions of constitutional law de novo. *Id*.

All those who have been accused of a crime also have a Sixth Amendment right to the effective assistance of counsel in their defense. *People v Anderson (After Remand)*, 446 Mich 392, 402; 521 NW2d 538 (1994). However, the burden is on the defendant to prove that he did not receive effective assistance. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Appellate courts afford defense attorneys wide discretion in trial strategy "because many calculated risks may be necessary in order to win difficult cases." *People v Bass*, 317 Mich App 241, 278; 893 NW2d 140 (2016), quoting *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008) (quotation marks omitted). Therefore, a defendant must overcome a strong presumption that his counsel's actions and inactions were sound trial strategy. *People v Horn*, 279 Mich App 31, 40; 755 NW2d 212 (2008).

To prevail on an issue of ineffective assistance of counsel, "a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation prejudiced him so as to deprive him of a fair trial." *People v Garza*, 246 Mich App 251, 255; 631 NW2d 764 (2001). In other words, after demonstrating that counsel took, or neglected to take, an action amounting to an unreasonable legal error, a defendant must show that "but for the error, the result of the proceedings would have been different and that the proceedings were fundamentally unfair or unreliable." *Id*.

We decline to hold that defense counsel performed ineffectively here. As this Court has previously explained, "[p]erhaps the most important criteria in selecting a jury include a potential juror's facial expressions, body language, and manner of answering questions." *Unger*, 278 Mich App at 258. Defense counsel had the opportunity to observe the jurors at the time the trial court addressed the incident at issue, including their facial expressions and body language. For us to decide that his decision not to object was unreasonable error would be substituting our judgment for that of trial counsel and utilizing the benefit of hindsight in assessing his performance, which we will not do. *Id*.

Moreover, as provided above, defendant failed to make any showing that the juror's misconduct affirmatively prejudiced his right to an impartial and fair jury, and there are no facts in the record to establish the jury was exposed to extraneous influences, or that these nonexistent influences harmed defendant at all. Thus, he cannot establish that counsel provided ineffective assistance, or that the outcome of the proceedings would have been different had counsel requested further inquiry into the situation. And because the trial court did not err by choosing not to question the jurors about the incident, any objection would have been futile. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## IV. SUFFICIENCY OF THE EVIDENCE

Next, defendant argues that there was insufficient evidence to support his conviction for felony-firearm because he did not know where the gun was at the time it was discovered by the police. In order to satisfy the requirements of due process, a conviction can be sustained only when the evidence shows guilt beyond a reasonable doubt. *Unger*, 278 Mich App at 222. Viewing the evidence "in a light most favorable to the prosecution," we determine "whether a rational trier of fact could have concluded that the elements of the offense were proven beyond a reasonable doubt." *Id*. In reviewing the evidence, we do not substitute our judgment for that of

the jury regarding witness credibility or the weight of the evidence. *Id*. Where the evidence conflicts, we resolve the conflict in the prosecution's favor. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). Circumstantial evidence and reasonable inferences that arise from the evidence can sufficiently prove the elements of a crime. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

The felony-firearm statute applies to "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony[.]" MCL 750.227b(1). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). Possession may be actual or constructive. *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). " '[A] person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons[.]' " *Id*. at 92, quoting *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010). In the context of firearms, constructive possession has been described as consisting of proximity and indicia of control. *Flick*, 487 Mich at 14, citing *People v Hill*, 433 Mich 464, 470; 446 NW2d 140 (1989). See also *People v Burgenmeyer*, 461 Mich 431, 438-439; 606 NW2d 645 (2000) (holding that the proper focus is not on where the gun was at the time of the police raid, but on where it was during the commission of the felony).

At trial, plaintiff established that the gun, which was registered to defendant, was found under the only mattress in the house in which defendant lived and in which he was conducting the ongoing felony of illegally growing marijuana. Thus, the evidence demonstrated defendant had constructive possession. Although defendant cites a friend's testimony that she had helped defendant look for the gun a month or two before because he had misplaced it, the jury was free to have disbelieved the friend's testimony. See *People v Davis*, 241 Mich App 697, 700. Again, in reviewing the evidence, we do not substitute our judgment for that of the jury regarding witness credibility or the weight of the evidence. *Unger*, 278 Mich App at 222.

Defendant's argument treats the statute "as though it prohibits possession of a firearm when a person *is arrested* for a felony," but this is not the proper inquiry. Instead, "[t]he proper question . . . is whether the defendant possessed a firearm *at the time he committed a felony.*" *People v Burgenmeyer*, 461 Mich 431, 438-439; 606 NW2d 645 (2000) (emphasis added). Therefore, it is irrelevant whether defendant knew the gun was under the mattress at the time the police searched the house. As discussed above, the jury could have inferred from the evidence presented that defendant possessed the gun, actually or constructively, while growing illegal marijuana.

## V. SECTION 8 DEFENSE

Finally, defendant argues that he should have been entitled to present an affirmative defense at trial under MCL 333.26428, Section 8 of the Michigan Medical Marihuana[4] Act,

---

[4] We will use the more common spelling, "marijuana," throughout this opinion, except when quoting the Michigan Medical Marihuana Act.

MCL 333.26421 *et seq.*[5]  Following a pretrial evidentiary hearing, the trial court issued an opinion and order precluding defendant from presenting a § 8 defense at trial.  Although defendant concedes that he produced insufficient evidence at the hearing for a full dismissal of his charges, he asserts that the trial court erred because "questions of fact existed which should have allowed the defense to be submitted to the jury."

"We review for an abuse of discretion a circuit court's ruling on a motion to dismiss, but review de novo the circuit court's rulings on underlying questions regarding the interpretation of the MMMA[.]" *People v Bylsma*, 315 Mich App 363, 376; 889 NW2d 729 (2016) (quotation marks and citation omitted).  " 'A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes.' " *Id*., quoting *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

Section 8 of the MMMA provides, in pertinent part:

(a) Except as provided in section 7(b), a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.  [MCL 333.26428 (citation omitted).]

---

[5] The trial court's opinion and order denying defendant the opportunity to present a § 8 defense was not included in the record until after defendant filed his claim of appeal.  Thus, this Court granted defendant's request to file a supplemental brief raising this argument.

Section 8 gives patients and primary caregivers the opportunity to assert an affirmative defense to charges involving marijuana. *People v Hartwick*, 498 Mich 192, 226; 870 NW2d 37 (2015). "[I]f a defendant has not presented prima facie evidence of each element of § 8 by 'present[ing] evidence from which a reasonable jury could conclude that the defendant satisfied the elements of the § 8 affirmative defense, . . . then the circuit court must deny the motion to dismiss the charges,' and 'the defendant is not permitted to present the § 8 defense to the jury.' " *Id*. at 227, quoting *People v Kolanek*, 491 Mich 382, 416; 817 NW2d 528 (2012).

We agree with the trial court that defendant failed to present prima facie evidence of each element of § 8 and, thus, was not entitled to present a § 8 defense at trial. Section 8(a)(1) contains the following 3 sub-elements, each of which a primary caregiver must establish for every "patient to whom the primary caregiver is alleged to have unlawfully provided marijuana":

> (1) The existence of a bona fide physician-patient relationship,

> (2) in which the physician completes a full assessment of the patient's medical history and current medical condition, and

> (3) from which results the physician's professional opinion that the patient has a debilitating medical condition and will likely benefit from the medical use of marijuana to treat the debilitating medical condition. [*Hartwick*, 498 Mich at 229-232.]

A valid registry identification card satisfies the second sub-element if issued after April 2013, as well as the third, but "leaves unsatisfied the first element of § 8(a)(1) (the existence of a bona fide physician-patient relationship)." *Id*. at 230-231.

At the evidentiary hearing, defendant claimed to be the primary caregiver under the MMMA at the time of his arrest for five individuals—Michael Williams, Jeffery Andrew Rist, Chantel Wright, Michael Maloney, and John Krautner—4 of whom testified, as well as a patient himself. And he produced for the court a patient card for himself plus five caregiver cards for each of the above individuals. However, assuming each patient, including defendant, had a valid card at the time of the offenses issued after April 2013, thereby satisfying the second and third sub-elements of § 8(a)(1), the trial court still correctly determined that defendant failed to present prima facie evidence from which a reasonable jury could find the existence of a bona fide physician-patient relationship for each of defendant's patients.

In *Kolanek*, 491 Mich at 396 n 30, the Michigan Supreme Court stated that a "bona fide physician-patient relationship" "envisions a pre-existing and ongoing relationship with the patient as a treating physician." *Hartwick*, 498 Mich at 231 (quotation marks omitted).[6] "Thus, to satisfy the first element—the existence of a bona fide physician-patient relationship—there must be proof of an actual and ongoing physician-patient relationship at the time the written certification was issued." *Id*.

---

[6] See also MCL 333.26423(a).

Maloney, whom Wright testified was her ex-husband and a former patient of defendant's, did not testify at the evidentiary hearing, and defendant presented no evidence to establish that Maloney had a bone fide relationship with a physician at the time his written certification was issued. Moreover, although Williams, Rist, Wright, and Krautner each cursorily testified that they received a marijuana prescription from a doctor before applying for a registry card, not one testified to any pre-existing and ongoing relationship with a prescribing doctor at the time their written certification was issued.

Having determined that defendant failed to present prima facie evidence of § 8(a)(1), we need not analyze the issue further and hold that the trial court did not abuse its discretion when it precluded defendant from presenting a § 8 defense at trial. Nevertheless, we conclude that the trial court also properly found that defendant failed to present prima facie evidence of § 8(a)(2) and (3).

Under § 8(a)(2), the evidence must show that "[t]he patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition[.]" MCL 333.26428(a)(2). "The issuance of a registry identification card . . . does not show that an individual possess only a 'reasonably necessary' amount of marijuana 'to ensure uninterrupted availability' for the purposes of § 8(a)(2)." *Hartwick*, 498 Mich at 233. Instead, "[p]rimary caregivers must establish the amount of usable marijuana needed to treat their patients' debilitating medical conditions and then how many marijuana plants the primary caregiver needs to grow in order [to] ensure 'uninterrupted availability' for the caregiver's patients. This likely would include testimony regarding how much usable marijuana each patient required and how many marijuana plants and how much usable marijuana the primary caregiver needed in order to ensure each patient the 'uninterrupted availability' of marijuana." *Id*. at 235.

At the evidentiary hearing, neither Wright nor Krautner testified as to the approximate amount of marijuana defendant provided to meet their medical needs; and defendant presented no evidence regarding the amount of marijuana he supplied to Maloney. Further, defendant's only testimony with regard to whether the amount of marijuana he possessed was no more than reasonably necessary for his patients was his statement, without any explanation, that the 72 plants he maintained were enough to keep his patients adequately supplied. From this evidence, no reasonable jury could conclude that defendant and his patients were in possession of a quantity of marijuana that was not more than was reasonably necessary to ensure uninterrupted availability.

Finally, in accordance with § 8(a)(3), defendant was required to present evidence that he and his patients "were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition." MCL 333.26428(a)(3).

A registry identification card merely qualified a patient for the medical use of marijuana. It does not establish that at the time of the charged offense, the

-11-

defendant was actually engaged in the protected use of marijuana. Section 8(a)(3) requires that both the patient's and the primary caregiver's use of marijuana be for a medical purpose, and that their conduct be described by the language in § 8(a)(3). Thus, patients must present prima facie evidence regarding their use of marijuana for a medical purpose . . . . Primary caregivers would also have to present prima facie evidence of their own use of marijuana for a medical purpose and any patients' use of marijuana for a medical purpose. [*Hartwick*, 498 Mich at 237.]

Williams, Rist, Wright, and Krautner all testified that defendant provided them with marijuana for their various afflictions, but no testimony or other evidence, beyond the introduction of defendant's caregiver card for Maloney, established that defendant supplied Maloney with marijuana for a medical purpose at the time he was charged. Thus, on this basis alone, defendant failed to present prima facie evidence of § 8(a)(3).

Affirmed.

/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher