# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY BYRON-ROSS KINCADE,

        Defendant-Appellant.

UNPUBLISHED
January 30, 2020

No. 344822
Kent Circuit Court
LC No. 17-005282-FH

Before: MARKEY, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Timothy Kincade, appeals as of right his jury trial convictions of carrying a concealed weapon, MCL 750.227(2); felon in possession of a firearm, MCL 750.224f(5); felon in possession of ammunition, MCL 750.224f(6); possession of a firearm during the commission of a felony (felony-firearm) MCL 750.227b; and possession of a controlled substance less than 25 grams, MCL 333.7403(2)(a)(v). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

In May 2017, an officer with the Grand Rapids Police Department conducted surveillance on a residence suspected of being a drug house. Kincade was observed at the residence, and it appeared to the officer conducting the surveillance that Kincade was "well-known" and "in charge." Kincade left the residence on foot, but later returned driving a vehicle owned by one of his relatives. Another man at the residence, Chester Taylor, got into the vehicle with Kincade and they both departed. Shortly thereafter another officer observed Kincade turn without using his turn signal. As a result, a third officer initiated a traffic stop. Kincade did not have his driver's license with him, so the officer asked him to step out of the vehicle. Kincade, however, locked the doors and attempted to roll up the window. The officer was able to unlock the door and informed Kincade that he was under arrest. In response, Kincade "starting moving" toward the center console of the vehicle and also made a motion toward his left coat pocket. He was pulled from the vehicle. The police discovered a clear, plastic bag with a "white rock like substance" in Kincade's hand. In addition, a backpack was found behind the front passenger seat. Inside the backpack was "a very large chunk of white substance," a digital scale, a box of ammunition for a 25-caliber pistol, and a nine-millimeter handgun. A box of ammunition for a nine-millimeter handgun was discovered in the trunk of the vehicle.

-1-

The white substance in the bag Kincade was holding when he was arrested was determined to be 6.551 grams of cocaine. The white substance in the backpack was determined to be 13.738 grams of cocaine. In addition, a crime scene technician took a trace DNA swab from the handgun, the magazine in the gun, and the cartridges that were in the magazine. The swab was sent to the Michigan State Police crime lab, and a forensic scientist concluded that there were two strands of DNA on it. The forensic scientist testified that "[b]ased on the DNA results from the swab of the pistol, magazine and cartridges, it's at least 7.0 billion times more likely it originated from Kincade and an unrelated individual than if it originated from two unrelated unknown individuals."

## II. HEARSAY

### A. STANDARD OF REVIEW

Kincade argues that the trial court abused its discretion by admitting hearsay evidence against him. This Court reviews for an abuse of discretion the trial court's admission of evidence. *People v Duenaz*, 306 Mich App 85, 94; 854 NW2d 531 (2014). "A court abuses its discretion when it selects an outcome that is outside the range of reasonable and principled outcomes." *People v Waclawski*, 286 Mich App 634, 645; 780 NW2d 321 (2009).

### B. ANALYSIS

Kincade argues that the following exchange between himself and the mother of his children contains inadmissible hearsay:

> *Woman.* You said they got everything in your pocket?
>
> *Kincade.* And in the backpack.
>
>                 * * *
>
> *Woman.* What was in the backpack?
>
> *Kincade.* [inaudible response]
>
> *Woman.* Jesus.

Hearsay, however, is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). "A 'statement' is (1) an oral or written *assertion* or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." MRE 801(a). Therefore, for spoken words to qualify as a "statement" under the hearsay rules, the words must contain an assertion of fact that is—when made—"[]capable of being true or false." *People v Jones (On rehearing after remand)*, 228 Mich App 191, 204-205; 579 NW2d 82 (1998), mod in part on other grounds 458 Mich 862 (1998); see also *United States v Rivera*, 780 F3d 1084, 1092 (CA 11, 2015) (recognizing that neither "non-assertive statements that are incapable of being true or false" nor "statements that are indisputably false" qualify as hearsay). By nature, questions are not assertions of fact. As a result, the woman's questions "You said they got everything in your pocket?" and "What was in

the backpack" are not hearsay. They are questions that are incapable of being true or false and they cannot be offered for the truth of the matter asserted because no matter was, in fact, asserted. The questions were merely used to give context to the assertions of fact—the statements—spoken by Kincade during the conversation, i.e., that the police obtained everything in the backpack and his response to the question of what was in the backpack. Similarly, although a spoken name can constitute hearsay, when viewed in light of the conversation, it is plain that by speaking the name "Jesus," the woman was not making any assertion of fact that was capable of being either true or false. Rather, she was responding to Kincade's answer regarding the contents of the backpack. Because none of the woman's spoken words are "statements" under MRE 801(a), they cannot constitute hearsay under MRE 801(c).[1] The trial court did not abuse its discretion by admitting the woman's spoken words.

## II. SUFFICIENCY OF THE EVIDENCE

### A. STANDARD OF REVIEW

Kincade next argues that there was insufficient evidence to convict him of carrying a concealed weapon, felon in possession of a firearm, felon in possession of ammunition, and felony-firearm. Challenges to the sufficiency of the evidence are reviewed de novo and "in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011).

### B. ANALYSIS

Kincade only challenges the "possession" element of his convictions for felon in possession of a firearm, felon in possession of ammunition, carrying a concealed weapon, and felony-firearm. "Possession" of a firearm is an element of felon in possession of a firearm and felony-firearm. *People v Barbee*, 325 Mich App 1, 12 n 4; 923 NW2d 601 (2018). Further, the "carrying" element of carrying a concealed weapon "has been equated to possession." *Id*. And "possession" of ammunition is an element of felon in possession of ammunition. MCL 750.224f(3), (4). In order to prove possession of a firearm, the prosecution can prove either actual possession or constructive possession. *People v Minch*, 493 Mich 87, 91; 825 MW2d 560 (2012). "[A] person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . ." *People v Flick*, 487 Mich 1, 14; 790 NW2d 295 (2010) (quotation marks and citation omitted). "Possession can be established with circumstantial or direct evidence, and the ultimate question of possession is a factual inquiry to be answered by the jury." *Id*. (quotation marks and citation omitted). With regard to articles like firearms, our Supreme Court "has described constructive possession . . . as when there is proximity to the article together with indicia of control." *Id*. (quotation marks and citation omitted).

---

[1] Kincade's statements in response to the questions were party-opponent admissions, MRE 801(d)(2)(A), so although they were statements they were, by definition, not hearsay.

Here, the gun and ammunition were located behind the front passenger seat in a backpack in a vehicle driven by Kincade and owned by one of his relatives. Taylor, the only other occupant of the vehicle, was not seen entering the vehicle with the backpack. In addition, Kincade stated that the police got everything "in the backpack," which allows for an inference that he was aware of the backpack and of its contents. Further, based on the exchange between Kincade and the mother of his children, the jury could infer that Kincade was aware of its contents and that its contents were something shocking enough to prompt the woman to exclaim "Jesus." Finally, based on the DNA swab of the pistol, a forensic scientist opined that it was "at least 7.0 billion times more likely" that the DNA on the gun originated in part from Kincade. Viewing the above evidence in the light most favorable to the jury's verdict, there is sufficient evidence to support the jury's finding that Kincade possessed the gun and the ammunition.

## IV. INEFFECTIVE ASSISTANCE

### A. STANDARD OF REVIEW

Kincade next argues that his lawyer was ineffective for a number of reasons. He preserved this issue for appeal by moving for an evidentiary hearing on the ground that his lawyer's performance amounted to ineffective assistance. See *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). However, because the motion for an evidentiary hearing was denied, our review is limited to mistakes apparent on the record. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). In reviewing a claim of ineffective assistance, this Court should not "substitute [its] judgment for that of counsel on matters of trial strategy" or "use the benefit of hindsight when assessing counsel's competence." *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008).

### B. ANALYSIS

The defendant has the burden of establishing that he was denied effective assistance of a defense lawyer. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). The defendant must show that his lawyer's "performance was objectively deficient" and "that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). To satisfy the first requirement, the defendant "must overcome the strong presumption that [his lawyer's] performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *Payne*, 285 Mich App at 190. Further, a lawyer's failure to call an expert witness amounts to ineffective assistance "only when it deprives the defendant of a substantial defense." *Id.* (quotation marks and citation omitted). To satisfy the second requirement, the defendant "must show that, but for [his lawyer's] deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 290; 806 NW2d 676 (2011). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

In this case, the prosecution subpoenaed a forensic scientist to testify regarding the DNA on the swab from the firearm found in the backpack. The scientist explained that there were two strands of DNA on the gun, and opined that it was "at least 7.0 billion times more likely it

originated from Kincade and an unrelated individual than if it originated from two unrelated unknown individuals." On cross-examination, Kincade's lawyer told the forensic scientist that he would "have to help [her] out" by explaining the different types of DNA analysis tests. She also stated that the forensic scientist would have to help her understand the evidence because she "literally" did not understand DNA analysis. On appeal, Kincade contends that his lawyer's comments demonstrate that she was not prepared for trial and was not prepared to meet the DNA evidence presented by the prosecution.

However, notwithstanding her claim that she literally knew knowing about DNA and required the forensic scientist to help her out, Kincade's lawyer effectively cross-examined the forensic scientist. For example, she elicited testimony that the quantity of DNA on the swab of the pistol was .0192 nanograms of DNA even though forensic experts normally try to obtain .05 nanograms of DNA. The forensic scientist further admitted that .0192 "was lower than [the] best target area for a quantity of DNA," which may affect the "quality of the DNA profile . . . ." Finally, despite her self-proclaimed lack of knowledge of DNA evidence, Kincade's lawyer introduced the concept of "touch DNA" by asking the forensic scientist if it was possible for a person to have DNA on an object that he or she had never touched. The scientist agreed that, hypothetically, a person's DNA could show up on an object that he or she had never touched. On further questioning from Kincade's lawyer, the forensic scientist testified that if a person had sweaty hands and "lots of skin cells" that person could transfer his or her DNA to a second person and that second person could transfer the first person's DNA to another object such as a pen. Given the extensive cross-examination, it is plain that Kincade's lawyer had familiarity with DNA evidence. In context, her declaration that she knew "literally" nothing and needed help to understand the evidence is not indicative of incompetence. Instead, it suggests that her trial strategy was to encourage the forensic scientist to explain the shortfalls of his DNA analysis in terms understandable to the jury (who likely knew little about DNA evidence). In sum, based on this record, Kincade has not overcome the presumption that his trial lawyer's decision to cross-examine the prosecution's witness rather than to call another expert witness was a matter of sound trial strategy. See *Payne*, 285 Mich App at 190. Nor has he demonstrated that his lawyer was unprepared to effectively challenge the prosecution's DNA evidence.

Kincade next suggests that his defense lawyer's performance was constitutionally deficient because she did not retain an expert to explain to the complicated science of "touch DNA" to the jury. He contends that "a DNA expert could have explained that the DNA was touch DNA and [that the DNA] did not confirm that the gun was his beyond a reasonable doubt." He has not, however, made an offer of proof establishing the factual basis for this claim because nothing on the record reveals the existence of an expert who would have testified that the DNA on the gun was "touch DNA," as opposed to possibly being "touch DNA." Kincade's lawyer's trial strategy was to introduce the concept of "touch DNA" through the prosecution's witness in order to cast doubt on the prosecution's theory of the case. That decision was a strategic matter that does not constitute ineffective assistance.

Next, Kincade contends that his lawyer was "distracted and did not pay attention to his case." He claims "that at one point [his lawyer] asked the judge if she could withdraw and the judge told her she should stay on the case." Yet, Kincade has not identified any specific instance of his lawyer being distracted or not paying attention at trial. See *People v Bass*, 317 Mich App 241, 276 (2016). Additionally, none of the transcripts in the lower court record support his

assertion that his lawyer attempted to withdraw from the case. See *id*. Accordingly, Kincade has not established the factual basis of his claim that his lawyer was constitutionally deficient because she was distracted, inattentive, and alleged asked to withdraw from the case.

Next, Kincade argues that he was denied effective assistance because his lawyer failed to object to the trial court's jury instructions and verdict form. The verdict form provided in relevant part:

> On the charge, Unlawful Possession of a Controlled Substance with Intent to Deliver, we the jury unanimously find the Defendant, Timothy Kincade as follows: (mark one line only)
>
>     ____ : Not Guilty
>
>     ____ : Guilty
>
>     __X__ : Guilty of the lesser included charge, Unlawful Possession of a Controlled Substance

During deliberations, the jury asked the trial court, "If we cannot 100 percent agree on count one, then do we have to agree on a lesser charge?" In response, the judge instructed the jury that it "may only check one of the boxes down there." The trial court also told the jury that "a verdict in a criminal case must be unanimous."

Kincade asserts that the combination of the verdict form and the court's instructions to the jury deprived the jury of the opportunity to find him not guilty of possession of a controlled substance. We disagree. Defendants are "entitled to have a properly instructed jury consider the evidence against [them]." *People v Wade*, 283 Mich App 462, 467; 771 NW2d 447 (2009). However, even if the trial court presents "somewhat imperfect" jury instructions, they "are not erroneous if they fairly present the issues for trial and sufficiently protect the defendant's rights." *People v McLaughlin*, 258 Mich App 635, 668; 672 NW2d 860 (2003). "The verdict form is treated as, essentially, part of the package of jury instructions." *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 299 (2012). Defendants are "deprived of [their] constitutional right to a jury trial when the jury is not given the opportunity to return a general verdict of not guilty." *Wade*, 283 Mich App at 467.

Here, a plain reading of the verdict form shows that the jury could return a general verdict of not guilty, a verdict of guilty of unlawful possession of a controlled substance with intent to deliver, or a verdict of guilty of unlawful possession of a controlled substance. The court's response to the jury's question instructed that any guilty verdict had to be unanimous and that they had to select *one* of the three boxes on the verdict form. One of the boxes allowed the jury to find that Kincade was "not guilty." Ultimately, the jury instructions, even when coupled with the verdict form, allowed the jury the opportunity to return a general verdict of not guilty. Further, although the jury was instructed that its verdict must be unanimous, it was never instructed that it had to return a guilty verdict. Because the verdict form was not defective, any objection to it would have been futile. *Ericksen*, 288 Mich App at 201. Likewise, because the instructions did not deprive the jury of the opportunity to return a not guilty verdict, any

objection to the instructions would have also been futile. See *id*. Therefore, Kincade's lawyer was not ineffective for failing to object to the verdict form and jury instructions.

## V.  PROSECUTORIAL MISCONDUCT

### A.  STANDARD OF REVIEW

Kincade also argues that the prosecutor's mischaracterization of evidence in his closing argument amounted to prosecutorial misconduct. Additionally, he argues that his lawyer's failure to object to the mischaracterization amounted to ineffective assistance. Because Kincade failed to preserve the issue of prosecutorial misconduct for appeal, we review this issue for plain error. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

### B.  ANALYSIS

"[A]llegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). A prosecutor's statement must be "evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial to determine whether a defendant was denied a fair and impartial trial." *People v Brown*, 267 Mich App 141, 152; 703 NW2d 230 (2005). In general, prosecutors have "great latitude regarding their arguments and conduct." *People v Bahoda*, 448 Mich 261, 282; 531 NW 2d 659 (1995) (quotation marks and citation omitted).

In this case, Kincade argues that the prosecutor mischaracterized the evidence by arguing that the backpack must have been Kincade's, by arguing that Kincade's DNA established "actual physical control" over the firearm in the backpack, and by asserting that the house surveilled by the police was a "drug house." His contentions lack merit. The evidence allowed an inference that the backpack belonged to Kincade. He was driving the vehicle that it was located in, the other occupant was not seen entering the vehicle with a backpack, and Kincade's statements in the jail call indicated that he was familiar with the backpack and its contents. Further, there was evidence to support that Kincade had actual physical control over the gun given that a forensic scientist opined his DNA was likely on the firearm. Finally, there was testimony that the house being surveilled was, in fact, a drug house. A prosecutor's argument does not constitute prosecutorial misconduct when he or she makes "a rational argument based on the evidence and common experience." *People v Ackerman*, 257 Mich App 434, 450; 669 NW2d 818 (2003). Further, a prosecutor may "argue the evidence and all reasonable inferences from the evidence as it relates to [his] theory of the case." *Bahoda*, 448 Mich at 282 (quotation marks and citation omitted). Although the inferences the prosecutor argued were not characterized in a manner favorable to the defense that does not render them improper arguments. Thus, there was no prosecutorial misconduct in this case. And, because the prosecutor's statements were proper, Kincade's lawyer was not ineffective for failing to object. See *Ericksen*, 288 Mich App at 201.

Affirmed.

/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly

-7-